

# IN THE
# TENTH COURT OF APPEALS

## No. 10-07-00091-CR

**BARRY LEE DUDZIK, JR.,**

                                              **Appellant**

**v.**

**THE STATE OF TEXAS,**

                                              **Appellee**

---

**From the 85th District Court
Brazos County, Texas
Trial Court No. 04-04922-CRF-85**

---

## O P I N I O N

---

A jury found Barry Lee Dudzik guilty of aggravated assault with a deadly weapon and assessed a prison sentence of ten years. In this appeal, Dudzik asserts four issues. We will affirm.

### Background

The evidence shows that during a dispute and fight inside the College Station strip club, Silk Stockings, Dudzik stabbed the victim Patrick Henry when he refused to let him into the club because he was underage. Dudzik admitted to threatening,

punching, and stabbing the victim, but he claimed it was in self-defense, which the trial court submitted to the jury. All of the parties to the dispute and fight, including Dudzik, testified. Dudzik's version contradicted the inconsistent versions of the other witnesses, including that of the victim, Henry, who had been a bouncer at the club.

**Sufficiency of the Evidence to Support Jury's Rejection of Self-Defense Claim**

In his first two issues, Dudzik complains that the evidence is legally and factually insufficient to support the jury's decision to reject his claim of self-defense. Specifically, Dudzik complains that the evidence is insufficient to prove that he was not acting in self-defense when he stabbed Henry because Henry's testimony conflicted both with his own prior statement and with that of other witnesses.

Self-defense is justified when a person "reasonably believes" that "force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." TEX. PEN. CODE ANN. § 9.31(a) (Vernon 2003). The use of deadly force is warranted only where "self-defense is justified under Section 9.31, a reasonable person would not have retreated, and when *deadly* force is reasonably necessary to protect against another's use or attempted use of *deadly* force." *Bumguardner v. State*, 963 S.W.2d 171, 173 (Tex. App.—Waco 1998, pet ref'd); *see* TEX. PEN. CODE ANN. § 9.32(a)(1)-(3) (Vernon 2003).

*Standard of Review*

Self-defense is a defense, not an affirmative defense, under the Penal Code. TEX. PEN. CODE ANN. §§ 2.03, 2.04, 9.02, 9.31 (Vernon 2003); *Saxton v. State*, 804 S.W.2d 910, 912 n.5 (Tex. Crim. App. 1991). The defendant has the burden of producing some

evidence to support a claim of self-defense. *Zuliani v. State,* 97 S.W.3d 589, 594-95 (Tex. Crim. App. 2003). Once the defendant produces that evidence, the State then bears the burden of persuasion to disprove the raised defense. *Id.* The burden of persuasion does not require the State to produce evidence; it requires only that the State prove its case beyond a reasonable doubt. *Id.* A determination of guilt by the factfinder implies a finding against the defensive theory. *Id.* The issue of self-defense is a fact issue to be determined by the jury, which is free to accept or reject the defensive issue. *Saxton*, 804 S.W.2d at 912 n.5.

When a defendant challenges the legal sufficiency of the evidence to support rejection of a defense such as self-defense, we examine all of the evidence in the light most favorable to the verdict to determine whether a rational jury could have found the accused guilty of all essential elements of the offense beyond a reasonable doubt and also could have found against appellant on the self-defense issue beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914. In conducting our review of the legal sufficiency of the evidence, we do not reevaluate the weight and credibility of the evidence, but ensure only that the jury reached a rational decision. *See Muniz v. State,* 851 S.W.2d 238, 246 (Tex. Crim. App. 1993).

In a factual sufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). "The court reviews the

evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact." *Johnson*, 23 S.W.3d at 7 (quoting *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)). The appellate court "does not indulge in inferences or confine its view to evidence favoring one side of the case. Rather, it looks at all the evidence on both sides and then makes a predominantly intuitive judgment. . . ." *Id.* (quoting William Powers and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence*," 69 TEXAS L. REV. 515, 519 (1991)). The nature of a factual sufficiency review authorizes an appellate court, although to a very limited degree, to act as the so-called "thirteenth juror" to review the factfinder's weighing of the evidence and disagree with the factfinder's determination. *Watson*, 204 S.W.3d at 416-17.

When a defendant challenges the factual sufficiency of the rejection of a defense, viewing all of the evidence in a neutral light, we ask whether the State's evidence, taken alone, is too weak to support the verdict and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance. *Zuliani*, 97 S.W.3d at 594-95. The State meets its burden of persuasion by proving its case beyond a reasonable doubt and thus need not produce evidence directly refuting the evidence of the defense. *Id.* at 594. If there is a reasonable doubt with respect to the existence of a defense, the accused must be acquitted. TEX. PEN. CODE ANN. § 2.03(d) (Vernon 2003); *Winkley v. State,* 123 S.W.3d 707, 712 (Tex. App.—Austin 2004, no pet.). In other words, the trier of fact must find against the defendant on the defensive issue beyond a reasonable doubt. *See Saxton,* 804 S.W.2d at 914.

*Analysis*

At the time of the incident, Matthew Bailey and Dudzik were employed as temporary contractors on a project to build a Sonic Restaurant in Bryan-College Station. That evening, Dudzik suggested that the two go to the Silk Stocking after work. At that time, Bailey was over twenty-one years of age, but Dudzik was not. Before going to the club, Bailey and Dudzik went to several bars where they were both served alcohol. When they arrived at the club, Dustin Summers, the club's manger, was stationed at the podium on the right side of the club's entrance; he was checking identification and taking money. In order to enter the club, a person had to have identification to prove that they were twenty-one years of age. Summers testified that Bailey presented his identification but Dudzik did not. Bailey and Dudzik went outside and when they returned Henry had taken over for Summers at the podium. Bailey tried to convince Henry to allow them to enter and promised him they would not drink. Henry refused them entrance because Dudzik did not have identification showing that he was over twenty-one.

Henry testified that after he informed Dudzik that he could not enter the club without identification Dudzik became agitated and asked "how about I kick or cut your n------ a--." In response, Henry unhooked the chain separating the foyer from the rest of the club to escort Dudzik out of the club. There was a chain between the podium at the entrance and the wall, and when a person was allowed to enter the chain was unhooked so that person could enter the club. Henry testified that once he unhooked the chain, Dudzik hit him and then immediately stabbed him in the abdomen and temple. Henry

also testified that he was still standing behind the podium when Dudzik stabbed him. When asked why Henry felt it was necessary to come around the podium to unhook the chain, he said "I didn't come around, I wasn't coming around. He came to me. He hit me first." Then he said he might have been in the process of coming around, but that he intended to walk Dudzik out of the club. Henry consistently denied that he left the podium to confront Dudzik because of the use of a racial slur.

Blake Rudolph testified that he followed Dudzik and Bailey into the club on the night of the incident. He remembered that they were having trouble getting into the club and that Henry asked the two to leave because they were underage but they refused. After Rudolph entered the club, he heard Dudzik talking "trash" and using racial slurs and then he saw Henry walk towards Dudzik to escort him out of the club. Rudolph testified that while Henry was initially walking towards Dudzik, something changed that caused Henry to take Dudzik down to the ground. Rudolph was uncertain as to what caused Henry to tackle Dudzik, but at all times Dudzik appeared to be in a rage. After the fight was broken up, Dudzik continued to taunt Henry and yelled "nobody's going to take him to jail" and "that he knows [sic] all the lawyers in town, he'll get out of this." Dudzik then attempted to get in his truck and leave the scene.

Summers testified that he saw Henry and Dudzik begin to wrestle at the entrance of the club. Summers reached in to grab Dudzik to throw him out of the club, but his momentum caused all three of them to fall to the ground. Summers then heard someone yell out that Dudzik had a knife. Summers stated that Dudzik continued to

swing at them as he tried to remove him from the club. At that point, Jeremy Savant, a club regular, joined Summers and helped him drag Dudzik outside. After Dudzik was removed, Henry came outside and informed Savant and Summers that he had been stabbed. Savant then ran over to Dudzik and handcuffed him. According to Summers, as Dudzik was attempting to flee he yelled something about a relative being a sheriff. After he was handcuffed, Charles Stabenow, a patron at the club, handed Summers the knife that he saw Dudzik throw into a plant inside the club.

Considering all of the evidence in the light most favorable to the verdict, the jury could rationally have found beyond a reasonable doubt that Dudzik committed the offense of aggravated assault with a deadly weapon, rejecting his self-defense claim. *See Saxton*, 804 S.W.2d at 914; *see also Padilla v. State*, --- S.W.3d ---, 2008 Tex. App. Lexis 2719, at *4 (Tex. App.—Eastland Apr. 17, 2008, pet. filed) (evidence was legally sufficient to support jury's rejection of self-defense claim because victim testified that appellant was the aggressor and "rational juror could have believed her testimony and rejected [appellant's] self-defense claim"). Accordingly, we find the evidence to be legally sufficient and overrule Dudzik's first issue.

In his brief, Dudzik's factual sufficiency complaint further argues the credibility of the witnesses and their inconsistent testimony. Specifically, Dudzik argues that at trial Henry testified that it was the club's policy to escort patrons from the club only when they refused to leave. Henry then testified that Dudzik did not refuse to leave but that he attempted to escort Dudzik out of the club, which Dudzik argues is an internal inconsistency. Regarding the stabbing, Dudzik argues that Henry's testimony was

contradicted when Henry testified that he yelled to Summers that he had been stabbed while he and Dudzik were still fighting inside the club but Summers testified that Henry told him he was stabbed when he and Henry were talking after the fight outside of the club.

Viewing all of the evidence in a neutral light, we conclude that the evidence is factually sufficient to support the jury's rejection of Dudzik's self-defense claim and its finding of his guilt. Henry's testimony, when considered by itself, is not too weak to support the rejection of Dudzik's self-defense claim; and the evidence of his guilt is not against the great weight and preponderance of the evidence. *See id.* at 595.

The record demonstrates that Dudzik stabbed Henry, and Dudzik does not dispute this fact. The only evidence to support Dudzik's claim of self-defense was his testimony at trial and Bailey's testimony about the events preceding the stabbing, which were contradicted in key respects by Rudolph and Henry. The jury's decision to accept or to reject Dudzik's claim of self-defense ultimately hinged on the credibility of the witnesses. There was conflicting evidence about the fight between Dudzik and Henry and it was within the jury's province to resolve the disputed versions of the events in question. By returning a verdict of guilty, the jury necessarily resolved those conflicts in favor of the State. Giving due deference to the jury's role as the factfinder, we will not disturb its finding. *See Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Accordingly, we find that the evidence was factually sufficient and overrule Dudzik's second issue.

## Extraneous Evidence

Dudzik complains in his third and fourth issues of the evidence admitted and excluded at trial.  In issue three, he argues that the trial court abused its discretion when it excluded the testimony of Clay Grenwelge because it was admissible to show not only that Henry was the first aggressor but also to show motive, intent, and state of mind.  In issue four, Dudzik complains that evidence that he was on prescription medication to control his temper was not admissible because its probative value was outweighed by the danger of unfair prejudice.

We review a trial court's decision to admit or exclude evidence for abuse of discretion.  *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).  We do not substitute our judgment for that of the trial court but rather decide whether the trial court's decision was arbitrary or unreasonable.  *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).

Dudzik argues that Grenwelge would have presented evidence to the jury about an incident similar to the incident for which Dudzik is charged.  Specifically, about Henry's state of mind when he hears racially charged comments.  Outside of the presence of the jury, Grenwelge testified that in early 2000 he was attacked by Henry at Silk Stockings.  According to Grenwelge, he and a friend were sitting at the bar when he noticed his friend inappropriately touching the employees of the club as they walked by.  When Henry approached them, Grenwelge turned to his friend and said "I think the pet gorilla thinks it's time for us to go home."  Henry allegedly then started hitting Grenwelge, knocked him to the ground and repeatedly kicked him.  Grenwelge claims

that he tried to file charges against Henry, but he never received a return phone call from the Police Department. After the proffer, the trial judge citing *Tate v. State* ruled that Grenwelge's testimony was not admissible. *Tate v. State*, 988 S.W.2d 887, 891 (Tex. App.—Austin 1999), *aff'd*, 981 S.W.2d 189 (Tex. Crim. App. 2003).

In his brief, Dudzik argues that the proffered testimony was admissible to show motive, intent, and state of mind, especially when somebody uses a racial slur against Henry. Dudzik cites to a line of cases which hold that in the context of proving the deceased was the first aggressor, specific, violent acts are relevant apart from showing character conformity by demonstrating the deceased's intent, motive, or state of mind. *See Tate v. State*, 981 S.W.2d 189 (Tex. Crim. App. 2003); *Torres v. State*, 71 S.W.3d 758 (Tex. Crim. App. 2002); *Mozon v. State,* 991 S.W.2d 841, 846 (Tex. Crim. App. 1999).

Evidence of the victim's violent character is relevant to support a claim that the victim was the first aggressor, even if the defendant was unaware of the victim's violent character. TEX. R. EVID. 404(b); *Mozon*, 991 S.W.2d at 845. However, for this theory to apply, the defendant must first offer evidence of an actual act of aggression by the victim at the time of the offense. *Currie v. State*, 692 S.W.2d 95, 97-98 (Tex. Crim. App. 1985).

Because Dudzik testified that Henry was the first aggressor, he was entitled to offer evidence of extraneous acts of violence by the victim. Therefore, the court abused its discretion by excluding this evidence. We must now determine whether this error requires reversal.

The erroneous exclusion of a defendant's evidence generally constitutes non-constitutional error unless the excluded "evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002). We have determined that the excluded evidence in Dudzik's case is relevant to his defensive theory. However, its exclusion did not prevent him "from presenting the substance of his defense to the jury." *Id.* at 666 (quoting *U.S. v. Willie*, 941 F.2d 1384, 1399 (10th Cir. 1991)). Accordingly, we will determine whether the erroneous exclusion of Grenwelge's testimony requires reversal using the harm analysis set out in Rule of Evidence 103(a) and Rule of Appellate Procedure 44.2(b).[1] *See* TEX. R. EVID. 103(a); TEX. R. APP. P. 44.2(b); *Potier*, 68 S.W.3d at 666.

In *Tate*, the trial court improperly excluded the victim's previous threat to kill the defendant, as such a threat was admissible to show the victim's state of mind. *Tate*, 988 S.W.2d at 889. However, the court of appeals found no error in the exclusion of the victim's threat, as the evidence showed that in the middle of the physical altercation, the defendant pulled a knife and stabbed the unarmed victim. *Id.* at 891. Thus the court of appeals held "the absence of any evidence that [the victim] used deadly force against Tate convinces us that the erroneous exclusion of Glen's testimony did not have

---

1   As the Court of Criminal Appeals explained, "[T]he specific rule that applies to [the erroneous admission or exclusion of] evidence is Rule of Evidence 103(a): 'Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.' But the standard of review under that rule is the same as that under Rule of Appellate Procedure 44.2(b)." *Potier v. State*, 68 S.W.3d 657, 666 (Tex. Crim. App. 2002) (quoting TEX. R. EVID. 103(a)).

substantial and injurious effect or influence in determining the jury's verdict rejecting Tate's self-defense claim." *Id.*

Like *Tate*, the record reflects that at the very least Dudzik pulled a knife during the middle of a physical altercation and stabbed Henry, who was unarmed. Furthermore, like *Tate*, there is no evidence that Henry used deadly force against Dudzik. Several witnesses testified that Dudzik did not attempt to retreat and refused to leave even after the altercation ended. Consequently, the exclusion of Grenwelge's testimony did not have a substantial or injurious effect or influence in determining the jury's verdict rejecting Dudzik's self-defense claim. Because we do not think the minds of an average jury would have found the State's case any less persuasive had the testimony been admitted, we overrule Dudzik's third issue.

Dudzik also argues that the trial court erred when it admitted evidence that he was taking prescription medication to control his temper. He argues that though the evidence may have been relevant under evidence Rule 401, it was not admissible under Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice.

A Rule 403 analysis by the trial court should include, but is not limited to, the following factors: (1) how probative is the evidence; (2) the proponent's need for the evidence; (3) the time the proponent needs to develop the evidence; and (4) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way. *Reese v. State*, 33 S.W.3d 238, 240-41 (Tex. Crim. App. 2000).

We must give appropriate deference to the trial court's determination that the probative value of the evidence in question is not substantially outweighed by the danger of unfair prejudice. *See Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We should reverse such a determination "rarely and only after a clear abuse of discretion." *Id.* (quoting *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1991)).

The probative value factor "looks to the evidence's probativeness or how compellingly the evidence serves to make a fact of consequence more or less probable." *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). Here, the key dispute was whether Dudzik acted with criminal intent or in self-defense. Evidence of Dudzik's need for medication to control his temper was probative as to his state of mind and intent when he stabbed Henry. There was also disputed evidence as to whether Dudzik actually acted in self-defense. Henry testified that Dudzik was the first aggressor and other witnesses testified that they did not see who acted first. As such, the State's need for evidence suggesting that Dudzik was acting with criminal intent as opposed to self-defense was great. The first two factors weigh in favor of admissibility.

Further, the evidence of Dudzik's mental history was introduced through Bailey, Dudzik's witness, who made a statement to police on the night of the incident that "the defendant told me he was on meds for a bad temper." There is no indication that the State spent more than a minimal amount of time presenting evidence of Dudzik's temper medication. Thus, three of the four factors under consideration favor the court's decision to admit the evidence regarding Dudzik's temper medication. Accordingly,

giving appropriate deference to the trial court's decision, we cannot say that the court abused its discretion by admitting this evidence. *See Moses*, 105 S.W.3d at 627. Therefore, we overrule Dudzik's fourth issue.

## Conclusion

Having overruled Dudzik's issues, we affirm the judgment.


BILL VANCE
Justice

Before Chief Justice Gray,
     Justice Vance, and
     Justice Reyna
     (Chief Justice Gray concurs only in the judgment of the Court to the extent it affirms the trial court's judgment. A separate opinion will not issue. He would also like to hear argument in this case.)
Affirmed
Opinion delivered and filed November 26, 2008
Publish
[CR25]