

# IN THE
## TENTH COURT OF APPEALS

### No. 10-09-00069-CR

**JASON BRENT BISHOP,**

           **Appellant**

 **v.**

**THE STATE OF TEXAS,**

           **Appellee**

**From the 40th District Court**
**Ellis County, Texas**
**Trial Court No. 32297CR**

## MEMORANDUM OPINION

A jury convicted Jason Brent Bishop of murder and assessed his punishment at life imprisonment. Bishop contends in six points that: (1) the evidence is legally and factually insufficient to support the jury's rejection of his self-defense claim; (two points) (2) the court erred by denying his request for a charge on the lesser-included offense of manslaughter; (3) the court's *sua sponte* objections to defense counsel's cross-examination of witnesses was a comment on the evidence and was prejudicial; (4) the prosecutor engaged in harmful misconduct by prompting a bailiff to remove several

weapons from the witness stand as Bishop testified and by making an improper argument regarding parole law; and (5) the cumulative effect of these errors was so great that reversal is required.  We will affirm.

## Sufficiency of the Evidence

Bishop contends in his first and second points respectively that the evidence is legally and factually insufficient to support the jury's rejection of his self-defense claim.

In reviewing a claim of legal insufficiency with regard to the rejection of a defense, we do not look to whether the State has presented evidence refuting the defense.  *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991); *Dudzik v. State*, 276 S.W.3d 554, 557 (Tex. App.—Waco 2008, pet. ref'd).  Rather, we view all the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt and also could have found against the defendant on the defense beyond a reasonable doubt.  *Saxton*, 804 S.W.2d at 914; *Dudzik*, 276 S.W.3d at 557.

In reviewing a claim of factual insufficiency with regard to the rejection of a defense, we review all of the evidence in a neutral light and ask whether the State's evidence taken alone is too weak to support the verdict or the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence. *Zuliani v. State*, 97 S.W.3d 589, 594-95 (Tex. Crim. App. 2003); *Dudzik*, 276 S.W.3d at 557.

Robert Willmon was driving Bishop from Missouri to Texas for Bishop to get a copy of his birth certificate.  Bishop testified that he was concerned about Willmon's use of methamphetamine during the drive and flushed the remaining methamphetamine

down a toilet at an interstate rest stop. According to Bishop, Willmon became angry when he told him what he had done. Bishop believed Willmon was reaching for a handgun in the seat between them, so Bishop grabbed it first. When Willmon "grabbed something with a blade" and lashed at Bishop, Bishop shot him. Bishop testified that he shot Willmon "a few more times" because Willmon "kept coming" and because he thought Willmon was trying to get a shotgun from behind the seat. Willmon got out of the pickup and, according to Bishop, "leaned against the side of the truck."

The State called six eyewitnesses to testify. Five testified that they saw Bishop shoot Willmon. The sixth, Princess Mills, testified that she heard shots fired then saw Bishop throw the handgun in the pickup. Pedro Gonzales testified that Willmon had nothing in his hand and made no gestures or threats before Bishop shot him. Viewed in the light most favorable to the verdict, this evidence is legally sufficient to establish the elements of murder and to support the jury's rejection of the self-defense claim. *See Saxton*, 804 S.W.2d at 914; *Dudzik*, 276 S.W.3d at 558-59. Thus, we overrule Bishop's first point.

Bishop contends in his second point that discrepancies in the witnesses' testimony cause the evidence to be factually insufficient with regard to the jury's rejection of his self-defense claim.

It is not disputed that Willmon ultimately fell to the ground after getting out of the pickup. According to Bishop, the primary discrepancy among the eyewitnesses is whether Bishop walked around the pickup and shot Willmon again after Willmon got out. Bishop denies doing so. Three of the witnesses testified that they saw Bishop

shooting Willmon as he lay beside the pickup. Torivio Martinez testified that he saw Bishop shoot Willmon through the cab of the pickup but did not see Bishop walk around the pickup and shoot Willmon again because he ran to get a DPS trooper. Melanie Francis saw Bishop shoot Willmon three or four times from the passenger side of the pickup and then wander off, but her view of the other side of the pickup was obstructed. Mills explained that she did not see Bishop fire any shots because she was fleeing the scene as she did not know in which direction he was shooting.

Bishop also notes discrepancies among these witnesses regarding whether he was wearing jeans or shorts and whether he was holding a bottle. However, the discrepancies in the witnesses' testimony go to the credibility of the witnesses and the weight to be given their testimony. *See Ramon v. State*, No. 04-06-00061-CR, 2007 Tex. App. LEXIS 7547, at *15 (Tex. App.—San Antonio Sept. 19, 2007, no pet.); *Denson v. State*, No. 02-03-00360-CR, 2005 Tex. App. LEXIS 3075, at *7 (Tex. App.—Fort Worth Apr. 21, 2005, pet. ref'd). It is solely within the province of the jury to resolve credibility issues and determine the weight to be given the testimony. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008); *Ramon*, 2007 Tex. App. LEXIS 7546, at *15; *Denson*, 2005 Tex. App. LEXIS 3075, at *7.

In addition to discrepancies, Bishop highlights portions of the witnesses' testimony and other evidence which support his self-defense claim. Three witnesses testified that Bishop and Willmon were arguing or "hollering." Many knives were recovered from the pickup, and a shotgun was recovered from behind the seat. Bishop

also relies on Martinez's testimony that he saw something fall inside the pickup after the initial shooting, suggesting that this testimony supports his own testimony that Willmon threatened him with a bladed weapon. However, Martinez late clarified that he did not see who dropped whatever the object was but believed that it was "definitely" not Willmon because his hands were both "wide open before he got shot."

The autopsy revealed that Willmon had been consuming methamphetamine which the medical examiner testified could definitely cause violent behavior. The medical examiner also testified that the trajectory for one of the gunshot wounds "could be" consistent with Willmon reaching down to get something while sitting in the driver's seat and another was "possibly" consistent with him turning around and reaching for something.

Viewed in a neutral light, the evidence is factually sufficient to support the jury's rejection of Bishop's self-defense claim and its verdict of guilt. The evidence supporting the verdict is not too weak to support the rejection of the self-defense claim and is not against the great weight and preponderance of the evidence. *See Dudzik*, 276 S.W.3d at 559. Thus, we overrule Bishop's second point.

**Lesser-Included Offense**

Bishop argues in his third point that the court erred by denying his request for a charge on the lesser-included offense of manslaughter.

To obtain a charge on a lesser-included offense, (1) the requested instruction must be for a lesser-included offense of the charged offense under article 37.09 of the Code of Criminal Procedure, and (2) there must be "some evidence" that, if the

defendant is guilty, he is guilty of only the lesser-included offense. *Flores v. State*, 245 S.W.3d 432, 439 (Tex. Crim. App. 2008).

Under article 37.09, manslaughter is a lesser-included offense of murder. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09(3) (Vernon 2006);[1] *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003); *Nevarez v. State*, 270 S.W.3d 691, 693 (Tex. App.—Amarillo 2008, no pet.). Thus, our inquiry is limited to the issue of whether there is evidence that Bishop is guilty of only manslaughter, *i.e.*, that he acted recklessly rather than intentionally or knowingly.

Texas courts have uniformly concluded that a defendant who claims to have acted in self-defense cannot also claim to have acted recklessly. *Nevarez*, 270 S.W.3d at 695; *Martinez*, 16 S.W.3d 845, 848 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd); *see Kennedy*, 193 S.W.3d 645, 652 (Tex. App.—Fort Worth 2006, no pet.). Thus, we overrule Bishop's third point.

### Trial Court Misconduct

Bishop claims in his fourth point that the trial court's "multiple *sua sponte* objections to defense counsel's cross examination of State's witnesses" were a comment on the evidence and unfairly prejudiced him before the jury. Bishop did not object to any of the four "objections" identified in his brief. Therefore, he did not preserve this issue for appellate review. *See* TEX. R. APP. P. 33.1(a)(1); *Sharpe v. State*, 648 S.W.2d 705,

---

[1] Article 37.09(3) provides, "An offense is a lesser included offense if . . . it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission." TEX. CODE CRIM. PROC. ANN. art. 37.09(3) (Vernon 2006).

706 (Tex. Crim. App. 1983); *Beltran v. State*, 99 S.W.3d 807, 811 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). Accordingly, we overrule his fourth point.

## Prosecutorial Misconduct

Bishop avers in his fifth point that the prosecutor engaged in harmful misconduct by prompting a bailiff to remove several weapons from the witness stand as Bishop testified and by making an improper argument regarding parole law.

### *Removal of Weapons*

Regarding the first allegation, Bishop complains that during his testimony the bailiff was prompted by the prosecutor to remove from the witness stand "knives, scissors and a gun" that had been admitted in evidence. When the bailiff removed the items, the court granted Bishop's request for an instruction to the jury that they "take no inference" from the bailiff's actions. After a brief discussion on the record, the court permitted the prosecutor to make the following statement in response to Bishop's contention that he had instructed the bailiff to remove the items. "I simply brought to the bailiff's attention that there were knives on the desk so that he would be in a heightened state of awareness. I did not ask him to remove the knives." Bishop objected to the prosecutor's statement, and the court sustained the objection. The court immediately instructed the jury, "The jury's instructed to disregard everything to do with the bailiff moving stuff, which he wasn't supposed to do without getting my permission."

With regard to this alleged instance of prosecutorial misconduct, the trial court did everything that Bishop asked him to, sustaining his objections and instructing the

jury twice on the matter. To preserve an issue for appellate review, an appellant must secure an adverse ruling. *See* TEX. R. APP. P. 33.1(a)(2); *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007); *Ashire v. State*, 296 S.W.3d 331, 343 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Bishop did not in this instance.

*Argument Regarding Parole Law*

Bishop also claims that the prosecutor made an improper argument regarding parole law during the punishment phase.

In punishment argument, Bishop asked the jury to impose a sentence of fifteen years so that he could avail himself of rehabilitation opportunities and "come out a recovered alcoholic and a recovered addict." In response, the prosecutor noted previous opportunities for rehabilitation which had been available to Bishop but which he had not taken advantage of. The prosecutor continued, "The only proper punishment is to put this man away for the rest of his life. And if he truly rehabilitates himself in some way, you leave that to the parole board." The court sustained Bishop's objection to this argument, instructed the jury to disregard it, and overruled his motion for mistrial.

Article 37.07, section 4 of the Code of Criminal Procedure prohibits a jury from considering how the parole law may apply to a defendant. *Lane v. State*, 303 S.W.3d 702, 718 (Tex. Crim. App. 2009); *see* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4 (Vernon Supp. 2009). The statute provides in pertinent part that the jury must be instructed as follows regarding parole law:

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

TEX. CODE CRIM. PROC. ANN. art. 37.07 § (4)(b).

In *Lane*, the Court of Criminal Appeals rejected a complaint similar to Bishop's. In that case, the appellant complained that he received ineffective assistance of counsel because of counsel's failure to object to the following argument:

> I said we're going to ask you to do something hard. We're going to ask you to sentence them to life. Now, understand, as the judge's instructions just explained to you, life doesn't necessarily mean life. Both of these defendants will have the opportunity, while they are incarcerated, to earn good conduct time and the right to parole. You have no say in that. That, quite frankly, will be up to them. Whether or not they make the decision, at that point in their life, to earn it, to prove they deserve it; because they certainly haven't proven they deserve it yet. They'll have that opportunity. It will not be denied them.

*Lane*, 303 S.W.3d at 718.

> The Court held that the argument was not improper.

> In this case, the prosecutors merely stated the law and how it could affect applicant. In *Hawkins v. State*, 135 S.W.3d 72, 84 (Tex. Crim. App. 2004), the court held that it was neither improper for the prosecutor to accurately restate the law given in the jury charge nor was it improper for the prosecutor to ask the jury to take the existence of that law into account when assessing punishment. Thus, trial counsel's performance was not deficient for failing to object to the prosecutors' argument.

*Id.* at 719.

The argument in Bishop's case was likewise not improper. Accordingly, we overrule his fifth point.

**Cumulative Error**

Bishop contends in his sixth point that the cumulative effect of the errors identified in his appellate points was so great that reversal is required. However, we have concluded that the issues identified in Bishop's points were either not preserved for appellate review or did not constitute error. "[W]e are aware of no authority holding that non-errors may in their cumulative effect cause error." *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999); *see Burrus v. State*, 266 S.W.3d 107, 115 (Tex. App.—Fort Worth 2008, no pet.). Thus, we overrule Bishop's sixth point.

We affirm the judgment.

FELIPE REYNA
Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Justice Davis
Affirmed
Opinion delivered and filed June 30, 2010
Do not publish
[CRPM]