# NO. 12-12-00142-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JUSTIN ANTWON JOHNSON,*<br>*APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Justin Antwon Johnson appeals his conviction for murder. In two issues, Appellant argues that the trial court erred in excluding witness testimony and that the order of court costs is not supported by the record. We affirm.

### BACKGROUND

Appellant's mother had dated a man named Willis Warfield intermittently for several years. In May 2011, bullets were fired into a house that Appellant shared with his mother. The shots were fired into Appellant's mother's bedroom. She was not home at the time, although Appellant and several of his siblings were sleeping in the home at the time the shots were fired. No one was injured, and the police were called. Appellant thought that Warfield might have been involved in the shooting and went to find him at the Valley Blues club, which was just a short walk from his house.[1] Appellant found Warfield there, and the two men argued. The argument ended when Appellant stabbed Warfield with a knife. Warfield was taken to the hospital and later died.

---

[1] The Valley Blues club was open on Thursday and Saturday nights. During other times of the week, people would congregate outside the club in a place Appellant called the "Valley Blues area." There were folding chairs and tables in this shaded area along with, Appellant testified, a bootlegger who sold alcohol to the people who congregated there. Appellant identified the Valley Blues as being just a short walk from his home.

1

Appellant was charged with murder. At his trial, Appellant testified that he and Warfield exchanged words outside the club and that he believed Warfield was a dangerous man. He knew Warfield to carry a knife, and he testified that he thought Warfield was attempting to draw his knife from his pocket.[2] For that reason, he grabbed a knife he had in his pocket and stabbed Warfield twice. Appellant sought to offer his testimony about Warfield's violent past activities and his propensity to carry a knife. The State objected, and the trial court sustained the objection. The jury found Appellant guilty as charged and assessed a sentence of imprisonment for thirty-three years. This appeal followed.

## FIRST AGGRESSOR EVIDENCE

In his first issue, Appellant argues that the trial court erred when it sustained the State's objection to the testimony Appellant proposed to offer about Willis Warfield.

### Standard of Review and Applicable Law

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Torres v. State,* 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). We may not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Id.*

Texas law allows both the state and the defense to offer "testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.36 (West 2005); *Garcia v. State*, 201 S.W.3d 695, 702 (Tex. Crim. App. 2006); *Smith v. State*, 5 S.W.3d 673, 678-79 (Tex. Crim. App. 1999) (evidence admissible under Article 38.36(a) may still be excluded under the rules of evidence).

A defendant in a homicide prosecution who raises the issue of self-defense may introduce evidence of the victim's violent character. *See* TEX. R. EVID. 404(a)(2); *Torres v. State*, 117 S.W.3d 891, 894 (Tex. Crim. App. 2003). The evidence may include proof of specific, violent

---

[2] In his statement to police, Appellant did not mention that Warfield had a knife or that he attempted to attack him with it. Rather, Appellant told police that Warfield repeatedly threatened to kill him and members of his family, he thought Warfield might have a gun, and that the police had not sufficiently protected his family, even though they called police on Warfield for his threats and alleged transgressions on several past occasions.

acts of misconduct to show the reasonableness of the defendant's fear of danger, or to show that the victim was the first aggressor. *Torres*, 71 S.W.3d at 894.

However, the evidence may not simply show that a victim was acting in accordance with his character. *Id*. at 894–95 ("This Court has held that specific, violent acts are relevant apart from showing character conformity in the context of proving that the deceased was the first aggressor by demonstrating the deceased's intent, motive, or state of mind."). There must be evidence of aggression by the deceased. *Id*. at 895.

Furthermore, a court does not err in excluding evidence when the evidence of aggression is unambiguous, that is to say when the evidence of aggression needs no further explanation. *See id*.; *Smith v. State*, 355 S.W.3d 138, 150-51 (Tex. App.–Houston [1st Dist.] 2011, pet. ref'd) (victim's act of pulling a knife and stabbing actor not ambiguous); *Reyna v. State*, 99 S.W.3d 344, 347 (Tex. App.–Fort Worth 2003, pet. ref'd) (alleged actions of displaying gun and shooting defendant were not ambiguous). Stated differently, when the victim's alleged conduct unambiguously shows that the victim was the first aggressor, evidence of prior violent acts may not be relevant apart from their tendency to show character conformity for which the prior violent acts would not be admissible. *See London v. State,* 325 S.W.3d 197, 206 (Tex. App.—Dallas 2008, pet. ref'd). Accordingly, "two conditions must exist before a complainant's extraneous act will be admissible to support a claim of self-defense: (1) some ambiguous or uncertain evidence of a violent or aggressive act by the victim must exist that tends to show the victim was the first aggressor; and (2) the proffered evidence must tend to dispel the ambiguity or explain the victim's conduct." *James v. State,* 335 S.W.3d 719, 728 (Tex. App.—Fort Worth 2011, no pet.).

**Analysis**

At trial, Appellant proposed to offer evidence that Warfield had previously threatened him, had previously "attempted to stab" him, had assaulted Appellant's mother, often carried a knife in his pocket, and that he was known to brandish that knife and threaten people with it. Appellant's mother, his brother, and his cousin testified as part of Appellant's offer of proof as to Warfield's propensity to threaten to kill people when he was angry or intoxicated, and that he often carried a knife. The trial court sustained the State's objection to this evidence.

Appellant argues that the trial court erred in excluding this evidence because it would have shed light on Willis Warfield's actions and shown that he intended to harm Appellant. The State argues that Appellant's testimony was not true because other evidence contradicts his version of

3

events and that Warfield's act of standing up and placing his hand in his pocket was not an aggressive act. The State's arguments undercut its position, because the more ambiguous and contradictory the evidence is shown to be, the more likely it is that the trial court should have allowed the testimony to come in as evidence.[3] In other words, the more ambiguous the circumstances, the more important the evidence becomes to Appellant's claim that Warfield was the first aggressor. And if Warfield's act is viewed neutrally as merely rising from a chair, the evidence of his violent nature and propensity to carry a weapon is necessary to explain an otherwise ambiguous act. *Torres*, 71 S.W.3d at 895 ("The proper predicate for the specific violent prior act by the deceased is some act of aggression that tends to raise the issue of self-defense, which the violent act may then help clarify.").

The key to understanding the trial court's ruling is that the trial court determined that Warfield's action of rising from the chair and reaching for a knife was an "unambiguous aggressive act." The court told the parties that a different question would be presented if there was "some type of ambiguous conduct."[4]

The trial court's conclusion that Warfield's actions were unambiguously aggressive is within the zone of reasonable disagreement. Appellant's attorney asked Appellant what he thought Warfield was reaching for. Appellant said a "weapon" and said that he had "[n]o doubts at all. I know the man." According to his version of events, he had just accused Warfield of shooting into his home. Warfield responded with an obscenity, rose from his chair, and moved his hand as if to draw a weapon.

As we have explained, for an extraneous act of the complainant to be admissible to support a claim of self-defense, there must be some ambiguous or uncertain evidence of a violent or aggressive act by the complainant that tends to show that the complainant was the first aggressor

---

[3] Consistent with this position, the State opposed a jury instruction on the issue of self-defense, asserts that the trial court erred in instructing the jury on the issue, and terms the giving of the instruction an "undeserved windfall." The State asserts that this is so because the other evidence contradicted Appellant's testimony at trial and that his testimony was "the only source of evidence supporting his self-defense claim." However, it is not the role of a trial court to decide whether a self-defense claim is true, and the trial court in this case did not err by instructing the jury on the issue of self-defense. *See* **Ferrel v. State**, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001) ("A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense.").

[4] This is a complicated issue, and the trial court worked thoughtfully and diligently with the attorneys to reach what it considered to be the correct ruling. The day before the court made its ruling, the trial court suggested that Warfield's act of reaching into his pocket was not an aggressive act at all. The court asked the parties to brief the issue and indicated that it would research the issue overnight. The next day, the trial court reconsidered and determined that Warfield's act was not only aggressive, but that it was unambiguously aggressive.

4

and the proffered evidence must tend to dispel the ambiguity or explain the complainant's conduct. *Reyna*, 99 S.W.3d at 347. In one case, for example, the trial court did not abuse its discretion in disallowing evidence of a police officer's acts of violence, aggression, or aggressive behavior because the defendant alleged that the officer jumped on his back and pulled his hair out. *See Mai v. State*, 189 S.W.3d 316, 321 (Tex. App.–Fort Worth 2006, pet. ref'd). The court held that such conduct was unambiguous and that the proffered evidence did not dispel any ambiguity. *Id*. In another case, the court properly excluded evidence of a prior assault by the victim against the defendant because the defendant's testimony that she attacked him was unambiguous and did not require additional evidence. *See James*, 335 S.W.3d at 728.

In contrast, the court in *Torres* held that the decedent's "action of climbing up to the second-story balcony outside a bedroom window, unannounced and uninvited at 6:30 a.m., was an act of aggression" that was better understood with the addition of evidence of prior threats and by testimony about a prior incident where the same person had previously climbed in a person's window and threatened her. *Torres*, 117 S.W.3d at 896. In *Dudzik v. State*, 276 S.W.3d 554, 560 (Tex. App.–Waco 2008, pet. ref'd), as Appellant points out, the court held that because the defendant testified that the victim was the "first aggressor," he was entitled to offer evidence of extraneous acts of violence committed by the victim. The *Dudzik* case supports Appellant's position that every defendant claiming self-defense should be permitted to offer evidence about the victim's character or prior conduct. Such a reflexive rule may have reached the right result in the *Dudzik* case, but we think it is well established that the proposed evidence must also answer some ambiguity concerning the actions of the victim. *See, e.g., James*, 335 S.W.3d at 728; *Smith*, 355 S.W.3d at 150–51; *London*, 325 S.W.3d at 206; *Reyna*, 99 S.W.3d at 347.

The trial court did not abuse its discretion when it determined that Appellant's description of Warfield's reaching for a weapon described an unambiguous act and that evidence of Warfield's character and prior acts of violence was not necessary to explain Warfield's actions. It is not outside the zone of reasonable disagreement to conclude that Warfield's act of reaching for a weapon, especially in the heated confines of the discussion he and Appellant were having, is not ambiguous and is not, like the balcony climbing in the *Torres* decision, an act that needs to be placed in further context. Accordingly, we overrule Appellant's first issue.

5

**COURT COSTS**

In his second issue, Appellant argues that the judgment ordering him to pay court costs in the amount of $274.00 is not supported by the record because the record does not contain a bill of costs. Accordingly, Appellant asserts that the order of court costs must be stricken from the judgment. Alternatively, Appellant requests that this court remand the case to the trial court to determine whether a bill of costs was prepared and to forward that bill to this court.

## Applicable Law

We measure the sufficiency of the evidence supporting an order of court costs by reviewing the record in the light most favorable to the award. *See Mayer v. State*, 309 S.W.3d 552, 557 (Tex. Crim. App. 2010). The imposition of court costs does not alter the range of punishment, is authorized by statute, and is generally not conditioned on a defendant's ability to pay. *See* TEX. CODE CRIM. PROC. ANN. art. 42.16 (West 2006); *Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011). Court costs are supported if there is a bill of costs denominating the amount assessed and if those costs are authorized by statute. *See* TEX. CODE CRIM. PROC. ANN. arts. 103.001, 103.002 (West 2006).

## Analysis

The State argues that Appellant failed to preserve this issue by failing to assert it in a postjudgment motion. We disagree. Appellant need not object at trial or file a postjudgment motion challenging the sufficiency of the evidence supporting court costs. *See Guin v. State*, No. 12-13-00104-CR, 2013 WL 4680543 (Tex. App.—Tyler Aug. 29, 2013, no. pet. h.) (mem. op., not designated for publication) (citing *Mayer*, 309 S.W.3d at 555). The record has been supplemented with a bill of costs that lists the items of cost charged to Appellant. Accordingly, the record contains support for the trial court's assessment of $274.00 in court costs.

Appellant has not filed a reply brief or supplemented or amended his brief to raise any challenge to the correctness of any specific cost listed in the bill of costs. *See* TEX. R. APP. P. 38.3, 38.7; *see also Houston v. State*, No. 02-12-00514-CR, 2013 WL 4473763, at *3 (Tex. App.—Fort Worth Aug. 22, 2013, no. pet.) (not yet released for publication). Accordingly, because Appellant's concern that the record lacked a bill of costs has been addressed, and because he has not supplemented his brief or filed a reply brief challenging the assessment of any particular court cost, we overrule his second issue.

6

## <u>DISPOSITION</u>

Having overruled Appellant's two issues, we ***affirm*** the judgment of the trial court.

## <u>BRIAN HOYLE</u>
Justice

Opinion delivered October 16, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS
# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS
# JUDGMENT

**OCTOBER 16, 2013**

**NO. 12-12-00142-CR**

**JUSTIN ANTWON JOHNSON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th Judicial District Court
of Smith County, Texas. (Tr.Ct.No. 007-1035-11)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*