# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00504-CR

---

**Tiffany Wade, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 427TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-18-202900, THE HONORABLE TAMARA NEEDLES, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Tiffany Wade was convicted of aggravated assault with a deadly weapon and was sentenced to ten years' imprisonment. *See* Tex. Penal Code §§ 12.33, 22.02. On appeal, Wade contends that the trial court erred when it prevented her from presenting evidence from a witness who she contends was necessary to establish an element of her self-defense claim. We will affirm the trial court's judgment of conviction.

### BACKGROUND

Wade was charged with assaulting Ishanae Rogers outside the Austin Resource Center for the Homeless ("ARCH") late one evening in April 2018. At trial, the following witnesses testified: Rogers; Michael Partida, who witnessed the assault; Officer Michael Taylor, who responded to the scene; Officer Brian Huckaby, who arrested Wade near the ARCH; and Detective Darrell Lambert, who investigated the case. Additionally, a recording of the assault

was admitted into evidence. The recording was captured by the City of Austin's HALO system of cameras monitoring the downtown area.

In her testimony, Rogers explained that she went to a club downtown and then walked past the ARCH on the night in question; that one of her friends yelled, "Someone has a knife"; that she felt something stab her in the back; that she turned to see what happened; and that she saw Wade holding a knife and heard Wade say, "Yeah, I got you." Next, Rogers testified that a man and a woman grabbed Wade and that the man knocked the knife out of Wade's hand. Further, Rogers related that she passed out, was taken to the hospital, and had surgery because one of her lungs collapsed during the stabbing. Additionally, Rogers testified that she did not have any kind of interaction with Wade prior to the stabbing. Specifically, Rogers denied yelling at Wade, telling Wade to move locations, and slamming Wade's face into the sidewalk two days earlier. In her testimony, Rogers admitted that she was placed in jail months after the assault, but she denied making any type of threatening gesture to Wade in jail.

After Rogers finished testifying, Partida testified regarding the events that he observed outside the ARCH. Specifically, Partida explained that Rogers was walking on the sidewalk, that another woman was following her, that the woman came "up behind" Rogers, and that Rogers subsequently fell to her knees while holding her side. Further, Partida related that he went up to the woman and knocked a knife out of her hand. In his testimony, Partida explained that Rogers is a drug dealer, can be an aggressive dealer, and will "yell at people" and "raise her hand at somebody just to . . . tell them to get lost." However, Partida also described Rogers as "a very sweet person" and stated that he had never seen Rogers raise a hand "towards" someone.

Next, Officer Taylor testified that he watched surveillance footage of the assault. When describing the footage, Officer Taylor explained that the victim was facing away from a

2

woman in a green jacket and that the woman in the green jacket approached the victim. Further, Officer Taylor related that the recording did not show the victim talking with or having any sort of interaction with the woman in the green jacket before the offense but did show the woman in the jacket walking for a block and a half before the incident. Moreover, Officer Taylor described how the recording captured several people approaching the woman in the green jacket and confronting her after the assault.

In addition, Officer Huckaby testified that he was informed about a stabbing at the ARCH committed by a person wearing, among other things, a green jacket. Further, Officer Huckaby related that he found Wade a few blocks from the ARCH, that Wade matched the description of the suspect, and that Wade admitted that she had been involved in a disturbance earlier. Moreover, Officer Huckaby recalled that one of Wade's eyes was swollen and bruised.

Following Officer Huckaby's testimony, Detective Lambert testified that he interviewed Wade after she was arrested. Detective Lambert related that during the interview Wade mentioned a prior interaction between Rogers and her, but Detective Lambert testified that he reviewed the footage capturing the assault as well as footage from other cameras in the area and did not see any other interaction between the two women.

During the State's case-in-chief, a recording of the incident was admitted into evidence. The recording depicts a woman who was identified at trial as Rogers walking on a sidewalk and then stopping to interact with individuals in the area. The recording also captures a woman in a green jacket, who was identified at trial as Wade, walking towards Rogers before thrusting one of her arms forward in the direction of Rogers's back while Rogers was facing away from Wade. In addition, the recording shows Rogers subsequently grabbing her back

3

before running from the area and shows Wade walking after Rogers before several people in the area confronted Wade, knocked her to the ground, and kicked and punched her.

After the State finished calling its witnesses, Wade asked to call Lena Carson as a witness, and Carson testified outside the presence of the jury. In her testimony, Carson related that she was arrested in February 2018, had been in custody since being arrested, and did not witness the assault in April 2018. Moreover, Carson testified that she knew Wade and Rogers from when she stayed at the ARCH before being arrested but that neither of them told her anything about the assault. When asked to describe Rogers, Carson stated that Rogers was "a bully" and aggressive. For example, Carson related that Rogers once approached her at the ARCH and aggressively stated that Carson owed her money. Next, Carson explained that Wade and Rogers were placed in the same jail months after the assault and that Rogers "made a gesture to threaten" Wade when Rogers walked past Wade inside the jail. Additionally, Carson testified that Rogers has forcefully moved people when she did not want them resting in certain locations outside the ARCH and that Rogers has hit women in the past. Regarding one of those incidents, Carson testified that she previously saw Rogers tell a woman to move from a particular location outside the ARCH, hit her in the face, and throw her personal belongings down the street.

At the hearing, Wade argued that Carson should be allowed to testify about Rogers's character for violence and about the specific incidents of conduct summarized above because the testimony would be relevant to her claim of self-defense. In response, the State asserted that Carson's testimony was not relevant to any element of the alleged assault or to a self-defense claim. After considering the parties' arguments, the trial court sustained the State's objection.

Following the hearing, the trial resumed, and Wade was ultimately convicted of aggravated assault with a deadly weapon. Wade appeals the trial court's judgment of conviction.

## DISCUSSION

In one issue on appeal, Wade contends that the trial court erred when it denied her request to have Carson testify to the jury. More specifically, Wade contends that Carson's testimony would have established an essential element of her self-defense claim. Wade argues that evidence establishing that Rogers had an aggressive and disruptive character and had engaged in threatening and assaultive behavior, including making a threatening gesture to Wade while they were in jail, are "matters pertinent to the facts in this case." Additionally, Wade asserts that the testimony would have established that Rogers had previously become angry and violent with other people who, like Wade, were living near the ARCH. Wade also contends that Carson's testimony should have been admitted because it would have helped prove that she was not the initial aggressor. Accordingly, Wade contends that the trial court erred by not allowing Carson to testify.

Appellate courts review a trial court's ruling regarding the admission or exclusion of evidence for an abuse of discretion. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

In addition, an appellate court reviews the trial court's ruling in light of the record before the court "at the time the ruling was made." *Khoshayand v. State*, 179 S.W.3d 779, 784 (Tex. App.—Dallas 2005, no pet.).

With certain exceptions, the Rules of Evidence explain that character evidence "is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Tex. R. Evid. 404(a). One exception applicable to victims in criminal cases provides that a defendant "may offer evidence of a victim's pertinent trait." *Id.* R. 404(a)(3)(A). The Rules also prohibit the admission of evidence regarding a "crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" but further clarifies that this type of evidence may be admitted for nonconformity purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* R. 404(b).

Rule 405 applies when "evidence of a person's character or character trait is admissible" and states that a person's character may be proved by testimony about the person's reputation or by testimony in the form of an opinion; however, Rule 405(b) also specifies that a person's "character or trait may also be proved by relevant specific instances of the person's conduct" when the "person's character or character trait is an essential element of a charge, claim, or defense." *Id.* R. 405. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." *Id.* R. 401; *see also Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001) (explaining that evidence must be material and probative to be relevant).

On appeal, Wade argues that Carson's testimony about Rogers's character and about specific conduct that Rogers engaged in should have been admitted as proof of her self-

defense claim under Rule 405. *See* Tex. R. Evid. 405. However, "a victim's character is not an essential element of a claim of self-defense." *Tate v. State*, 981 S.W.2d 189, 192 n.5 (Tex. Crim. App. 1998); *see Campos v. State*, No. 11-14-00089-CR, 2016 WL 365375, at *3 (Tex. App.—Eastland Jan. 28, 2016, pet. ref'd) (mem. op., not designated for publication). "[T]he justification theory of self-defense does not inquire into, as an essential element, the character of the victim." *Evans v. State*, 876 S.W.2d 459, 464 (Tex. App.—Texarkana 1994, no pet.); *see also Tate*, 981 S.W.2d at 192 n.5 (observing that "[c]haracter per se is almost never an element of a charge or defense in criminal cases" (quoting Goode, Wellborn, & Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal* § 405.2 (2d ed. 1993))). Accordingly, the trial court could have reasonably determined that Carson's testimony amounted to impermissible character evidence and was not admissible as proof of an essential element of her self-defense claim. *See* Tex. R. Evid. 404, 405; *see also Tate*, 981 S.W.2d at 192 (observing that "evidence of a person's character may" generally "not be used to prove that she behaved in a particular way at a given time" even though evidence of disposition might be relevant to person's behavior on particular occasion).

To the extent that Wade argues that Carson's testimony could have been admitted on a noncharacter conforming basis because it would have helped prove that she was not the initial aggressor, we note that "[e]vidence of the victim's violent character" can be "relevant to support a claim that the victim was the first aggressor." *See Dudzik v. State*, 276 S.W.3d 554, 560 (Tex. App.—Waco 2008, pet. ref'd) (citing Tex. R. Evid. 404(b)). "However, for this theory to apply, the defendant must first offer evidence of an actual act of aggression by the victim at the time of the offense." *Id.* Stated differently, this type of "'uncommunicated character' evidence" may be admitted when "a witness testifies that the victim made an aggressive move

7

against the defendant" and then another witness "testifies about the victim's character for violence." *See Ex parte Miller*, 330 S.W.3d 610, 619 (Tex. Crim. App. 2009).

During the trial, no witness provided any testimony describing an aggressive move by Rogers against Wade at the time of the assault. *Cf. Dudzik*, 276 S.W.3d at 560 (concluding that defendant "was entitled to offer evidence of extraneous acts of violence by the victim" because defendant "testified that [victim] was the first aggressor"). On the contrary, Rogers denied having any interaction with Wade before the assault, and Partida did not testify regarding any aggressive move by Rogers before or after the stabbing. In addition, the recording of the incident did not capture any aggressive action by Rogers at any point. Although Detective Lambert testified that Wade told him during his investigation "that she had had some interaction with" Rogers prior to the incident, he did not provide any additional information regarding the nature or timing of this prior interaction. Moreover, Detective Lambert testified that he reviewed security footage from other HALO cameras in the downtown area and did not observe any interaction between Rogers and Wade. Furthermore, although Officer Huckaby testified that Wade's left eye was swollen and bruised, no witness testified that Rogers caused the injury. In addition, the recording of the assault captured Wade being shoved to the ground and punched and kicked repeatedly by people who witnessed the stabbing and were attempting to disarm her. Accordingly, the trial court could have reasonably concluded that the requirements for admitting evidence of prior acts of violence were not met. *Cf. id.* (explaining that "the defendant may *not* offer evidence of the victim's prior specific acts of violence to prove the victim's violent character and hence that the victim acted in conformity with that character trait at the time of the assault").

For these reasons, we conclude based on this record that the trial court did not abuse its discretion by concluding that Carson's testimony describing specific instances of Rogers's conduct and her character was not admissible. *See* Tex. R. Evid. 404, 405. Therefore, we overrule Wade's issue on appeal.

## CONCLUSION

Having overruled Wade's issue on appeal, we affirm the trial court's judgment of conviction.

_____

Thomas J. Baker, Justice

Before Chief Justice Byrne, Justices Baker and Smith

Affirmed

Filed: May 27, 2021

Do Not Publish

9