

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| KEITH DARREN CORLEY, | § | No. 08-23-00318-CR |
| Appellant, | § | Appeal from the |
| v. | § | 399th Judicial District Court |
| THE STATE OF TEXAS, | § | of Bexar County, Texas |
| Appellee. | § | (TC# 2021-CR-7114) |

**MEMORANDUM OPINION**[1]

A jury found Appellant Keith Darren Corley guilty of the murder of Delon Weaver and assessed punishment at 50 years' confinement. In six issues on appeal, Appellant asserts (1) that the trial court included improper judicial comment in the jury charge; (2) that the charge improperly failed to include both theories of murder in the self-defense application paragraph; (3) that the State misstated the law during closing arguments; (4) that the evidence is insufficient to support his conviction; (5) that he was wrongly ordered to pay court costs without an ability-to-

---

[1] The appeal was transferred to this Court from the Fourth Court of Appeals pursuant to a Texas Supreme Court docket equalization order. Accordingly, we apply the Fourth Court of Appeals' precedent to the extent it conflicts with our own. *See* Tex. R. App. P. 41.3.

pay hearing; and (6) that the impact of the State's violations of a motion in limine were not cured and he was thus entitled to a mistrial. Finding no error, we affirm.

## I. BACKGROUND

Alexius Cornelius testified at trial about events occurring moments before and after Delon Weaver sustained a fatal gunshot wound on May 24, 2021. Cornelius described that she and Appellant had dated for a short period of time and had a child, K., who was about eight months old on the date in question.[2] About two or three months after K. was born, Cornelius broke off her relationship with Appellant, and he was not regularly around either her or her child. To that extent, she noted that she and Appellant were not co-parenting K. Nonetheless, before the day of the shooting, she sometimes received communications from Appellant, "here and there," whenever he wanted to see K.

On May 24, 2021, Cornelius lived with K. in an apartment located on the second floor of a building. An outdoor staircase with a small landing led directly to her and her neighbor's front doors. On that day, Weaver and his son had stayed with her and K. in her apartment. Cornelius heard music that drew her attention to look out her window. She saw that Appellant had arrived in his vehicle. When he soon knocked on her door, she opened it while holding K. in her arms. She tried to step out, while closing the door behind her. Appellant wedged his foot in the door, not allowing her to walk out completely nor to close the door. Cornelius testified she did not want Appellant entering the apartment to "start anything" as Weaver and his son were both inside. Once inside, Appellant saw Weaver and asked: "[i]s this who you with now?" She testified she heard aggression in his voice, though he otherwise remained calm and was not yelling.

---

[2] To protect the identity of the child, the opinion will refer to her as K. *See* Tex. R. App. P. 9.10.

Concerned that a fight could erupt, she soon went out her front door while continuing to hold K. in her arms. Appellant followed her out the door, and they both stood on the second floor landing at the top of the stairs. There, he continued asking her about Weaver. As she and he were talking, Weaver appeared in the apartment's open doorway. From her position, she could only see that both men soon went falling down the stairs with Appellant falling backwards and Weaver falling forwards. During the tumble and fall, Appellant pulled out a gun and it fired. Cornelius testified she heard two shots but only one casing had been located. Appellant immediately fled the scene. Cornelius ran to a neighbor, and handed her K. before she returned to check on Weaver. He lay on the sidewalk at the bottom of the stairs with a pool of blood forming near his head. Eventually, police officers and EMS arrived on scene.

During Cornelius's testimony, the jury was also shown a video recording, without sound, that recorded the view from outside the apartment. From the recording, Cornelius can be seen holding K. while she steps outside her apartment onto the second-floor landing. Appellant soon steps outside after her. They spoke briefly before Appellant turned back toward the door where he appeared to speak to Weaver, who appears in the doorway from the apartment interior. Appellant and Weaver interact, and soon entangle. During the confrontation, Appellant pulled out his gun and grabbed Weaver's hair. After both men fall down the stairs, Appellant drives away in his vehicle while Weaver lays motionless on the sidewalk.

Cornelius testified she saw Appellant had a gun in his pocket when he entered her apartment while Weaver did not have a gun or a knife. One of the detectives assigned to the case testified that no weapons were recovered from inside the apartment. A police officer testified Appellant was arrested the same day as the shooting after he was located on a major highway between Houston and Dallas. At the time of his arrest, he gave a false name. During a search of

3

his vehicle, officers found a gun. Weaver died at the hospital as a result of a single gunshot wound to the chest. The bullet removed from Weaver's chest during the autopsy was later determined to have been fired from the gun recovered from the search of Appellant's vehicle. While Appellant was out on bond, and eight days before his first trial setting, he cut off his ankle monitor. He was arrested two months later.

At trial, the jury was instructed on two theories of murder: (1) Appellant intentionally and knowingly caused Weaver's death by shooting him with a deadly weapon (a firearm), and (2) with intent to cause serious bodily injury to Weaver, Appellant committed an act clearly dangerous to human life that caused Weaver's death by shooting him with a deadly weapon (a firearm). The jury also was instructed on self-defense. Appellant was convicted of murder.

## II.  SUFFICIENCY OF THE EVIDENCE

In his fourth issue, Appellant contends the evidence at trial was insufficient to support his conviction for murder, arguing no rational fact-finder could have found against him on his claim of self-defense. Because resolution of this issue in Appellant's favor would afford him the greatest relief if sustained, we reorder the issues of the appeal and begin with the sufficiency issue related to his claim of self-defense. *See Lopez v. State*, 615 S.W.3d 238, 248 (Tex. App.—El Paso 2020, pet. ref'd) (same).

### A.  Applicable law & standard of review

"[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." Tex. Penal Code Ann. § 9.31(a). A reasonable belief is one held by "an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42). There is both a subjective and objective component to reasonable belief. *Lozano v. State*, 636

4

S.W.3d 25, 32 (Tex. Crim. App. 2021). A defendant must subjectively believe that another person used or attempted to use unlawful force or deadly force against the defendant and that the defendant's use of unlawful or deadly force in response was immediately necessary. *Id.* And that belief must be objectively reasonable. *Id.*

In a claim of self-defense that would justify a defendant's use of force against another, the burdens at trial are distinct, and shift between the defense and the State. *Braughton v. State*, 569 S.W. 3d 592, 608 (Tex. Crim. App. 2018); *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). First, the defendant bears the burden to produce evidence supporting the defense. *Braughton*, 569 S.W.3d at 608; *Zuliani*, 97 S.W.3d at 594. "The defendant's burden of production requires him to adduce some evidence that would support a rational finding in his favor on the defensive issue." *Braughton*, 569 S.W.3d at 608. Once the defendant satisfies his burden, the State bears the burden of persuasion to disprove the raised issues. *Zuliani*, 97 S.W.3d at 594. The State's burden of persuasion "is not one that requires the production of evidence; rather it requires only that the State prove its case beyond a reasonable doubt." *Id.*

> In resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt.

*Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991) (en banc).

A determination of guilt by the fact-finder implies a finding against the defensive theory. *Dudzik v. State*, 276 S.W.3d 554, 557 (Tex. App.—Waco 2008, pet. ref'd). Self-defense is a fact issue to be determined by the jury, which is free to accept or reject the defensive issue. *Saxton*, 804 S.W.2d at 912 n.3; *Dudzik*, 276 S.W.3d at 557. The jury can believe all, some, or none of a

5

witness's testimony. *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020). Juries also can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial. *Id.* However, the jury is not allowed to draw conclusions based on speculation even if that speculation is not unreasonable because speculation is not sufficiently based on the evidence to support a finding of guilt beyond a reasonable doubt. *Id.* at 855–56. If the record supports contradictory reasonable inferences, we presume the jury resolved the conflicts in favor of the verdict. *Id.* at 856.

### B. Analysis

First, we review whether a reasonable fact-finder could have found the essential elements of murder beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914. The jury heard Cornelius's testimony about the day of the shooting and watched a video-recording of the incident. Although Appellant and the State disagreed about the logical inferences that flowed from the video-recording, if there are two permissible views of the evidence, the jury's choice between them cannot be clearly erroneous. *Braughton*, 569 S.W.3d at 608; *Metcalf*, 597 S.W.3d at 856. As a reviewing court, we may not reevaluate the weight and credibility of the evidence in the record and thereby substitute our own judgment for that of the fact-finder. *Braughton*, 569 S.W.3d at 608.

The jury also was aware that Appellant fled the scene after the shooting and later removed his ankle monitor before his first trial date, which suggests he did not believe his actions were legally justified. *See Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007) ("Evidence of flight evinces a consciousness of guilt."); *Miller v. State*, 177 S.W.3d 177, 184 (Tex. App.— Houston [1st Dist.] 2005, pet. ref'd) (concluding where defendant fled scene after killing complainant but later claimed self-defense, flight was circumstantial evidence of guilt).

6

We conclude a rational jury could have found that Appellant committed the offense of murder beyond a reasonable doubt.

Next, we review whether a reasonable fact-finder could have found against Appellant on his self-defense claim beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914. He argues the evidence shows he acted reasonably to protect himself from perceived use of force by Weaver.

As we previously noted, the jury had the opportunity to view the video-recording and listen to Cornelius's testimony before rejecting Appellant's claim that he acted in self-defense. Although Appellant's interpretation of the events depicted in the video-recording differed from the State's, that defensive evidence will not render the State's evidence insufficient because credibility determinations are solely within the jury's province and the jury is free to accept or reject the defensive evidence. *See Braughton*, 569 S.W.3d at 609; *Metcalf*, 597 S.W.3d at 856. Appellant also fled the scene, and a jury is entitled to disbelieve Appellant's self-defense explanation if his first action following the event is to run away. *See Hernandez v. State*, No. 03-14-00413-CR, 2015 WL 3858240, at *7 (Tex. App.—Austin June 16, 2015, no pet.) (mem. op., not designated for publication) (holding evidence that defendant fled the scene and made no attempt to inquire as to victim's condition undercut her self-defense claim).

We conclude a rational jury could have found against Appellant's self-defense claim beyond a reasonable doubt.

### C. Conclusion

We conclude a rational jury could have found the essential elements of murder were proved beyond a reasonable doubt and it could have found against Appellant on his claim of self-defense. Accordingly, the evidence is sufficient to support Appellant's murder conviction and the jury's rejection of his self-defense claim. We overrule Appellant's fourth issue on appeal.

# III. JURY CHARGE ERROR

Appellant's first and second issues on appeal concern alleged errors in the jury charge. In his first issue, Appellant contends the paragraph regarding the State's burden was an impermissible comment by the trial court on the evidence. In his second issue, he contends the trial court erred by not including both murder theories in the self-defense application paragraph.

## A. Applicable law & standard of review

Unless otherwise provided in the Texas Code of Criminal Procedure, "the jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." Tex. Code Crim. Proc. Ann. art. 36.13. A jury charge must include instructions that inform the jurors of the circumstances under which they should either convict or acquit. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022).

We analyze a claim of jury-charge-error under two steps: we first determine whether the charge is erroneous, and if it is, then we must decide whether the appellant was harmed by the erroneous charge. *Id.* When, as here, there was no timely objection to the charge, the record must show "egregious harm." *Id.* An erroneous jury charge is egregiously harmful if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory. *Id.* A finding of egregious harm must be based on "actual rather than theoretical harm." *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011).

## B. Judicial comment on the evidence

Appellant first contends a provision of the jury charge was an impermissible comment by the trial court on the evidence. The charge provided:

> The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

8

*It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all "reasonable doubt" concerning the defendant's guilt.*

In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict "Not Guilty." [Emphasis added.]

### (1) Applicable law

A trial court must maintain neutrality in providing the applicable law and its application in a jury charge. *Beltran De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019). The court may not express an opinion on the weight of the evidence or draw the jury's attention to particular facts. *Id.* With exceptions that do not apply here, the judge shall deliver to the jury "a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." Tex. Code Crim. Proc. Ann. art. 36.14. To accomplish this neutrality, Article 36.14 "is designed to prevent a jury from interpreting a judge's comments as a judicial endorsement or imprimatur for a particular outcome." *Beltran*, 583 S.W.3d at 617.

A trial court can ensure compliance with Article 36.14 by avoiding including non-statutory instructions in the charge "because such instructions frequently constitute impermissible comments on the weight of the evidence." *Id.* "Generally, definitions for terms that are not statutorily defined are not considered to be 'applicable law' under article 36.14, and thus it is usually error for the trial court to define those terms in the jury charge because they 'frequently constitute impermissible comments on the weight of the evidence.'" *Kersey v. State*, No. 08-20-

00037-CR, 2021 WL 5860920, at \*5 (Tex. App.—El Paso Dec. 10, 2021, pet. ref'd) (not designated for publication) (quoting *Beltran*, 583 S.W.3d at 617).

"[N]either the defendant nor the State is entitled to a special jury instruction relating to a statutory offense or defense if that instruction (1) is not grounded in the Penal Code, (2) is covered by the general charge to the jury, and (3) focuses the jury's attention on a specific type of evidence that may support an element of an offense or a defense." *Walters v. State*, 247 S.W.3d 204, 212 (Tex. Crim. App. 2007). "A judicial instruction that singles out a particular piece of evidence, but does not serve one of the legally authorized purposes set out above, risks impinging upon the 'independence of the jury in its role as trier of the facts, a role long regarded by Texans as essential to the preservation of their liberties.'" *Bartlett v. State*, 270 S.W.3d 147, 151–52 (Tex. Crim. App. 2008). "In such a case, the non-statutory instruction would constitute a prohibited comment on the weight of the evidence." *Id.*; *see also Beltran*, 583 S.W.3d at 617 (holding that "[e]ven a judge's innocent attempt to provide clarity for the jury by including a neutral instruction can result in an impermissible comment on the weight of the evidence because the instruction 'singles out a particular piece of evidence for special attention,' which the jury may then focus on as guidance from the judge."); *Kersey*, 2021 WL 5860920, at \*6 (jury was instructed as follows: "Joint possession is sufficient if the evidence shows beyond a reasonable doubt that the Defendant exercised actual care, custody, control or management of the alleged controlled substance. Mere presence alone is insufficient to prove possession." The court of appeals concluded the instructions were an erroneous comment on the weight of the evidence because they tended to draw the jury's attention to: (1) the State's theory that joint possession was an issue at trial; and (2) the appellant's theory that her mere presence at the scene was insufficient evidence to support her guilt.)

### (2) Analysis

Appellant does not contend the complained-of language singles out a particular piece of evidence. Instead, he points to arguments frequently made by prosecutors that draw a distinction between "all doubt" and "reasonable doubt." Appellant cites to *Fuller v. State*, 363 S.W.3d 583, 587 (Tex. Crim. App. 2012), which "stands for the proposition that: (1) the topic of 'beyond a reasonable doubt' is a proper area of inquiry; and (2) discussion of the different standards' requirements relative to each other is proper, thus allowing a party to explore the jury's understanding of the standard as being '*at least* [ ] a more onerous standard of proof than preponderance of the evidence and clear and convincing evidence.'" *In re Commitment of Fletcher*, 658 S.W.3d 834, 846 (Tex. App.—El Paso 2022, no pet.) (quoting *Fuller*, 363 S.W.3d at 587) (emphasis in original).

Appellant argues the complained-of instruction was improper because: (1) by mimicking an argument prosecutors routinely make, it favored the State, (2) it highlighted an apparent lack of reasonable doubt because it immediately followed the "beyond a reasonable doubt" instruction, (3) the jury could have deliberated under the erroneous instruction because it appeared immediately above the application paragraph, and (4) it was not a required legal instruction.[3]

The Court of Criminal Appeals has considered nearly identical language and concluded there was no error in including such an instruction in a jury charge. *See Woods v. State*, 152 S.W.3d 105, 114-15 (Tex. Crim. App. 2004) (en banc) (concluding trial court did not err by including the

---

[3] In a criminal trial, courts generally do not include a definition or instruction in the jury charge of the phrase "beyond a reasonable doubt." *See Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000) (holding a reasonable doubt instruction is not required but can be used if both parties agree). Accordingly, each individual juror must decide what "proof beyond a reasonable doubt" means and the amount of proof required to meet the beyond a reasonable doubt standard. *See Fuller v. State*, 363 S.W.3d 583, 587 (Tex. Crim. App. 2012) (jurors should supply their own meaning of the phrase "beyond a reasonable doubt" based on "their own common-sense understanding of the words").

following language in the jury charge: "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt."); *Mays v. State*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010) (relying on *Woods* to conclude no error in charge that contained the following language: "It is not required that the prosecution prove guilt beyond all possible doubt. It is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt."). Following these precedents, we conclude the trial court did not err by including the complained-of instruction in the jury charge.

Furthermore, Appellant's argument is merely speculation that the jury did not follow its instructions. We presume juries understand and follow the instructions of the court unless the record reflects otherwise. *Felix v. State*, No. 08-23-00136-CR, 2024 WL 2758715, at *14 (Tex. App.—El Paso May 29, 2024, pet. ref'd) (mem. op., not designated for publication). An appellant may rebut the presumption by pointing to evidence in the record establishing the jury failed to follow the instructions. *Id.* Appellant points to no evidence in the record that the jury failed to follow the trial court's instructions, and we will not speculate to the effect that it did so.

### C. Self-defense application paragraph

In his second issue, Appellant contends the trial court erred by not including both murder theories in the self-defense application paragraph.

#### (1) Applicable law

When the trial court charges the jury on self-defense in the abstract, it declares that issue to be law applicable to the case. *Mendez v. State*, 545 S.W.3d 548, 556 (Tex. Crim. App. 2018). Here, the jury was informed under what circumstances it should convict Appellant of murder, and because self-defense was law applicable to the case, the trial court also informed the jury under

12

what circumstances it should acquit him of that offense. Appellant contends the charge allowed the jury to convict under two theories, but the self-defense instruction omitted the second theory thereby depriving him of a self-defense instruction under the second theory.

### (2) Analysis

Paragraph 4 of the jury charge defined for the jury when the use of deadly force against another was and was not justified and defined relevant terms. Paragraph 5 contained both theories of murder and instructed the jury as follows:

> Now, if you unanimously find from the evidence beyond a reasonable doubt that on or about the 24th Day of May, 2021, in Bexar County, Texas:
>
> - the defendant . . . did intentionally and knowingly cause the death of [complainant] by shooting [the complainant] with a deadly weapon, namely, a firearm; or
>
> - the defendant . . . with intent to cause serious bodily injury to [the complainant] did commit an act clearly dangerous to human life that caused the death of [complainant] by shooting [the complainant] with a deadly weapon, namely, a firearm;
>
> *Then you will next consider whether the defendant . . . acted in self defense and proceed on to Paragraph 6.* [Emphasis added.]

Paragraph 6 contained the self-defense instruction and stated as follows:

> Now, keeping in mind the instructions on self defense given in Paragraph 4, even if you unanimously find that the State has proven beyond a reasonable doubt that the defendant . . . committed the offense of murder, as charged in the indictment and as instructed in Paragraph 5, you must decide whether the State has proven beyond a reasonable doubt that the defendant did not act in self defense.
>
> Therefore, if you find from the evidence beyond a reasonable doubt that the defendant . . . committed the offense of murder *as charged in the indictment and as instructed in Paragraph 5*;
>
> But you further find from the evidence that, or you have a reasonable doubt as to whether, at the time he did so:

13

(1) [the defendant] reasonably believed, as viewed from his standpoint, that [the complainant] was using or attempting to use unlawful deadly force against [the defendant]; and

(2) [the defendant] reasonably believed, as viewed from his standpoint, that his use of deadly force and the degree of deadly force used were immediately necessary to protect himself against [the complainant's] use or attempted use of unlawful deadly force; and

(3) [the defendant's] use of deadly force was not in response to verbal provocation alone;

. . . .

Then, you will find in favor of the defendant . . . on his claim of self defense and find the defendant not guilty of the offense of murder. [emphasis added]

On appeal, Appellant relies on *Rider v. State* and *Jordan v. State* for his argument that the self-defense instruction omitted the second theory of murder. In *Rider*, the defendant was indicted on two separate theories of murder: (1) he intentionally or knowingly caused Nichols's death by shooting him with a firearm and (2) he intended to cause serious bodily injury and committed an act clearly dangerous to human life by shooting Nichols, and thus caused his death. No. 05-20-00220-CR, 2022 WL 1769116, at *2 & *4(Tex. App.—Dallas June 1, 2022, no pet.) (mem. op., not designated for publication). The charge, which stated as follows, allowed the jury to convict the defendant under either theory:

Now, therefore, bearing in mind the foregoing definitions and instructions, if you believe from the evidence beyond a reasonable doubt that on or about November 11, 2018, in Dallas County, Texas, the defendant did then and there *intentionally or knowingly*, cause the death of Jimar Nichols by shooting him with a firearm, a deadly weapon, but you further find from the evidence, or have a reasonable doubt thereof, that the defendant reasonably believed that deadly force when and to the degree used, if it was, was immediately necessary to protect himself against the use or attempted use of unlawful deadly force by Jimar Nichols, you will acquit the defendant and say by your verdict "not guilty." If you so believe, or if you have a reasonable doubt thereof, you will acquit the defendant of the offense and say by your verdict "not guilty."

14

*Id.* (emphasis added). The court of appeals concluded the charge was erroneous because it applied self-defense only to the first theory of murder ("intentionally and knowingly"), not both theories. *Id.*

In *Jordan*, the jury charge defined the offense of murder and the lesser-included offenses of involuntary manslaughter and criminally negligent homicide. 782 S.W.2d 524, 525 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd). The charge then instructed the jury regarding the law of self-defense. *Id*. It applied self-defense to the offense of murder but not to the lesser-included offenses. *Id.* The jury convicted the appellant of involuntary manslaughter. *Id.* The court of appeals concluded the application paragraph was "misleading" "[a]bsent any instruction advising the jury of their duty to apply self-defense to each of the charged offenses[.]" *Id.* at 526.

Unlike these cases, the self-defense instruction given by the court did not single out only one theory of murder. In paragraph 5, which included both murder theories, the jury was instructed under what circumstances it should convict Appellant of murder. Paragraph 5 then ended by instructing the jury to "next consider whether the defendant . . . acted in self-defense and proceed on to Paragraph 6." Paragraph 6 referred back to Paragraph 5 ("if you find from the evidence beyond a reasonable doubt that the defendant . . . committed the offense of murder as charged in the indictment and as instructed in Paragraph 5") and instructed the jury under what circumstances it should acquit Appellant of the offense of murder.

### D. Conclusion

We conclude the trial court's instructions to the jury did not contain error. Therefore, we overrule Appellant's first and second issues on appeal.

## IV.  THE STATE'S CLOSING ARGUMENT

In his third issue, Appellant asserts the State misstated the law regarding self-defense and the use of deadly force during its closing argument. The State argued:

> There is no self-defense claim here, ladies and gentlemen. *In order to use deadly force, deadly force has to be used against you*. There was none here. Defense is going to come up here and say, He pushed me. He was going to fall off the stairs. Not once was he falling off the stairs until he, himself, started to pull out the gun and go backwards. [Emphasis added.]

Appellant contends the above-emphasized sentence is not the law in Texas because a person may exercise self-defense, even with deadly force, in much broader circumstances.

The right not to be subjected to improper jury argument is forfeitable by inaction. *See Mosley v. State*, 666 S.W.3d 670, 674 (Tex. Crim. App. 2023); *Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018). "Even incurably improper jury argument is forfeitable." *Hernandez*, 538 S.W.3d at 623. Here, Appellant did not raise an objection to the State's closing argument; therefore, he forfeited the ability to complain about it on appeal. *See id.* We overrule Appellant's third issue on appeal.

## V.  COURT COSTS

In his fifth issue, Appellant asserts he was ordered to pay court costs without an on-the-record hearing regarding his ability to pay in violation of Texas Code of Criminal Procedure Article 42.15. On the day Appellant's sentence was pronounced in open court, the trial court signed the final judgment, which assessed costs in the amount of $5,575.00. Appellant contends remand is required because the trial court's failure to strictly comply with Article 42.15 prevents him from developing this claim on direct appeal. The State counters that Appellant notified the trial court that he was indigent immediately after the court pronounced sentence and the court acknowledged his indigency. We disagree with the State's characterization of the record.

16

At the conclusion of the punishment phase, the trial court assessed punishment at 50 years' confinement in the Institutional Division of the Texas Department of Corrections of Criminal Justice (TDC), informed Appellant he was entitled to credit for time served, thanked the attorneys, and wished Appellant good luck. The State said it had victim impact statements and defense counsel informed the court Appellant was indigent "for the appellate counsel." The trial court responded, "[w]e will make sure that . . . appellate counsel is representing him." Court costs were never mentioned and the statement regarding indigency was in the context of Appellant's ability to obtain appellate counsel; not whether he was able to immediately pay court costs. Therefore, on this record, we will assume without deciding that the trial court did not hold an Article 42.15 on-the-record hearing regarding Appellant's ability to pay court costs.

However, we further note Appellant did not request an Article 42.14 hearing. Recently, the Court of Criminal Appeals held that the right to an Article 42.15 hearing is a forfeitable right. *See Cruz v. State*, No. PD-0628-23, 2024 WL 4031525, at *3, (Tex. Crim. App. Sept. 4, 2024). The *Cruz* Court held as follows:

> An ability-to-pay inquiry is not fundamental to the adjudicatory system; it is a post-trial procedure that has nothing to do with adjudication; it does not ensure a jury, a fair trial, a correctly informed sentencing judge, or a defendant's ability to understand the proceedings against him. It does not implicate "the integrity of judicial sentencing proceedings" or "the criminal adjudicatory process[.]" [citation omitted] Requesting it would not likely be futile, and its post-trial timing forecloses the possibility that asking for it would expose the jury to the judge's bias. [citation omitted] Requiring an objection to enforce it would not undermine "the public's perception of the fairness of our judicial system" or engender "suspicions" about the system's "fairness and accuracy." [citation omitted] In short, an ability-to-pay inquiry made during or right after sentencing bears no consequence to the adjudicatory process.

*Id.*; *see also Crawford v. State*, No. 13-24-00083-CR, 2024 WL 4295278, at *5 (Tex. App.—Corpus Christi-Edinburg Sept. 26, 2024, no pet. h.) (mem. op., not designated for publication)

(following *Cruz*); *Upson v. State*, No. 07-24-00008-CR, 2024 WL 4206809, at *2–3 (Tex. App.—Amarillo Sept. 16, 2024, no pet. h.) (mem. op., not designated for publication) (following *Cruz*).

We are bound by the Court of Criminal Appeals' holding in *Cruz. See Martell v. State*, 656 S.W.3d 647, 652 (Tex. App.—El Paso 2022, pet. ref'd). Therefore, because Appellant forfeited his right to an ability-to-pay inquiry on the record by failing to request a hearing, he failed to preserve error. *See Cruz*, 2024 WL 4031525, at *3; Tex. R. App. P. 33.1(a).

The *Cruz* Court also held that "missing out on [a hearing] would not doom a defendant to undue hardship" because "[t]he same relief from fine and costs offered by Article 42.15(a-1)(1)-(4)—delayed or periodic payments, community service, and/or fine-and-costs waiver—is available forever after sentencing." *Cruz*, 2024 WL 4031525, at *3. In this case, the trial court signed the final judgment, which included the assessment of costs. The Bill of Costs informed Appellant he "must pay this Bill of Costs within the term of [his] probation or 120 days of [his] release from TDC." Thus, consistent with Article 42.15(a–1)(1), the final judgment included the assessment of court costs, but allowed Appellant to pay any unpaid costs upon his release from confinement.

Furthermore, if, upon his release, Appellant is unable to pay the court costs, he can seek relief from the trial court at that time. *Sloan v. State*, 676 S.W.3d 240, 242 n.2 (Tex. App.—Tyler 2023, no pet.). If a defendant notifies the court that he has difficulty paying costs in compliance with the judgment, "the court shall hold a hearing to determine whether that portion of the judgment imposes an undue hardship on the defendant." Tex. Code Crim. Proc. Ann. art. 43.035(a). "If the court determines at the hearing under Subsection (a) that the portion of the judgment regarding . . . costs imposes an undue hardship on the defendant, the court shall consider whether . . . costs should be satisfied through one or more methods listed under Article 42.15(a-

18

1).” *Id.* art. 43.035(c). The trial court retains jurisdiction for the purposes of making such a determination. *See id*. art. 43.035(e). Appellant does not argue that the trial court's determination that he should pay court costs at some later date amounted to an abuse of discretion.[4]

We overrule Appellant's fifth issue on appeal.

## VI. FAILURE TO GRANT A MISTRIAL

Finally, in two related sub-issues included in his sixth issue, Appellant complains of the trial court's failure to remedy the harm from violations of his motion in limine and its subsequent failure to grant a mistrial.

Prior to opening statements, defense counsel informed the trial court he had filed a motion in limine regarding "Any bad act, any extraneous offenses, anything like that."[5] The trial court responded, "Yes. And you will – before you present anything like that, you will approach and we'll have a hearing." During Cornelius's testimony, the following occurred:

THE STATE: Why did you two break up?

CORNELIUS: He was abusive and a manipulator. I didn't want to be with him.

THE STATE: So once you broke up with him, did you both go your separate ways and start dating other people?

CORNELIUS. He was already dating other people.

DEFENSE COUNSEL: Judge, may – may I approach on this[.]

(Bench conference.)

Judge, we had already discussed the issue in limine as far as any extraneous offenses. I think this witness just stated that my client was abusive. That directly is a violation of that motion in limine that we had to approach the Court before any

---

[4] For this reason, we hold that remanding the cause for an inquiry amounts to an unnecessary exercise and a waste of judicial resources. *See Sloan v. Stat*e, 676 S.W.3d 240, 242 (Tex. App.—Tyler 2023, no pet.).

[5] The clerk's record does not contain a written motion in limine.

extraneous offenses. The allegation that he was abusive, it's certainly an extraneous offense.

THE COURT: Let's – let's not get into prior bad acts or anything like that.

THE STATE: She can't go into any specifics.

THE COURT: Just keep it where it is.

Following this exchange, defense counsel asked Cornelius whether she "could have simply not opened up that door" when Appellant arrived at her apartment. She responded, "If I didn't open the door, he was going to kick it in. He threatened to kick my door multiple times before." Defense counsel again asked for a bench conference at which the following exchange occurred:

DEFENSE COUNSEL: So I'm not sure if this witness has been admonished on the motion in limine not to talk about extraneous offenses, but that's the second time she's volunteered extraneous type of criminal conduct. Breaking into a home, it's a crime. That's the second time she's done this. Is the State not admonishing this individual to not do this? We need her admonishing [Cornelius]. At this time we would ask for a mistrial.

THE STATE: And, Judge, we have admonished her, and Defense opened the questioning with the question that he asked.

THE COURT: What I'm going to do – I'll take care of this.

(Open court.)

THE COURT: Ma'am, what you need to do, listen real carefully to the question that's asked and just answer only it. Don't volunteer anything beyond that. Just listen closely and answer only the question that's asked. Okay. Go ahead.

Later, during the testimony of San Antonio Police Officer James Hill, the third alleged violation occurred when the State showed Hill two exhibits that were photographs of marijuana

20

and a gun found during the search of the car. Defense counsel asked for a bench conference at which the following exchange occurred:

> DEFENSE COUNSEL: Now, this witness clearly said that marijuana is in there and they, in fact, have a picture. So they know there's a motion in limine–this is the third time this has happened. I'm going to ask for a mistrial.
>
> THE STATE: This is an inventory of the car, Your Honor. So it's a search of the vehicle where they found the gun, and the gun was--
>
> THE COURT: I understand that, but . . . I don't think it's applicable to this particular–its probative value is outweighed by the prejudicial effect. So let's just get away from this.

At no time during any of the above exchanges did Appellant request the trial court to instruct the jury to disregard. On appeal, Appellant acknowledges that ordinarily a prompt instruction to disregard will cure error associated with an improper question and answer. However, he asserts trial courts have a sua sponte duty to "consider and administer remedies" before ruling on a motion for mistrial. Appellant contends that because the trial court here undertook an initiative to cure an error, it was required to do so properly by instructing the jury to disregard. Appellant contends he did not receive a fair trial because the trial court failed to sua sponte instruct the jury following the repeated violations of the motion in limine and subsequently failed to grant a mistrial.

Appellant relies on several cases that discuss a trial court's obligation to review alternative courses of action before granting a mistrial to support his argument that the trial court had a duty to instruct the jury on its own initiative in this case. *See Brown v. State*, 907 S.W.2d 835, 839 (Tex. Crim. App. 1995) (en banc) (citations omitted) ("Thus, prior to granting a mistrial based on manifest necessity, the trial judge must review the alternative courses of action and choose the one, which, in light of all the circumstances, best preserves the defendant's 'right to have his trial completed before a particular tribunal.'"); *Maydon v. State*, 141 S.W.3d 851, 857 (Tex. App.—

21

Corpus Christi-Edinburg 2004, no pet.) ("Despite a trial judge's discretion in declaring a mistrial based on manifest necessity, the trial judge is required to consider and rule out 'less drastic alternatives' prior to granting a mistrial.").

These cases involved whether a trial court erred by *granting* a mistrial based on manifest necessity without first considering other remedies. "[M]anifest necessity exists where the circumstances render it impossible to arrive at a fair verdict, where it is impossible to continue with trial, or where the verdict would be automatically reversed on appeal because of trial error. *Brown*, 907 S.W.2d at 839. Here, the trial court *denied* Appellant's request for a mistrial, and he does not argue he was entitled to a mistrial based on "manifest necessity." Therefore, we decline to extend these holdings to a case, such as the one here, where Appellant failed to request a curative instruction and the motion for mistrial was not granted.

Instead, we apply the well-settled rule that failure to ask the trial court to instruct the jury to disregard inadmissible testimony results in waiver of the alleged error where the instruction would have cured the error. *Thomas v. State*, 137 S.W.3d 792, 797 (Tex. App.—Waco 2004, no pet.). "An appellant who moves for a mistrial without first requesting a less drastic alternative forfeits appellate review of that class of events that could have been cured by the lesser remedy." *Ocon v. State*, 284 S.W.3d 880, 886–87 (Tex. Crim. App. 2009). On appeal, Appellant does not contend a limiting instruction would not have cured the error. *See Lusk v. State*, 82 S.W.3d 57, 61 (Tex. App.—Amarillo 2002, pet. ref'd) ("Generally, an instruction to disregard is sufficient to cure error when evidence of an extraneous offense is placed before the jury in violation of a motion in limine."); *Juan v. State*, No. 04-15-00770-CR, 2017 WL 2960407, at *9 (Tex. App.—San Antonio July 12, 2017, pet. ref'd) (mem. op., not designated for publication) (noting that counsel objected and moved for a mistrial, but did not ask the trial court to instruct the jury to disregard witness's

reference to the assault; court held, "unless Natasha's statement was incurable by an instruction to disregard, Juan has waived his right to appellate review of this issue").

Because Appellant did not request a curative instruction, he has waived his review of this complaint. We overrule Appellant's sixth issue on appeal in its entirety.

## VII. CONCLUSION

For the reasons stated above, we affirm the trial court's judgment.


GINA M. PALAFOX, Justice


October 15, 2024

Before Alley, C.J., Palafox and Soto, JJ.

(Do Not Publish)

23