

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00388-CR

Raymundo Jimenez **MOLINA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 452nd District Court, Edwards County, Texas
Trial Court No. 2252
Honorable Robert Rey Hofmann, Judge Presiding

Opinion by:　　Lori Massey Brissette, Justice

Sitting:　　　Rebeca C. Martinez, Chief Justice
　　　　　　　Lori I. Valenzuela, Justice
　　　　　　　Lori Massey Brissette, Justice

Delivered and Filed: July 9, 2025

AFFIRMED

This case presents the question of whether there is sufficient evidence to support a murder conviction despite the appellant's contention that he was acting in self-defense. Because we find the evidence sufficient, we affirm the trial court's judgment.

### BACKGROUND

Appellant, Raymundo Jimenez Molina was indicted for the murder of Victor Estrada. *See* TEX. PENAL CODE § 19.02(c). He admitted shooting Estrada but took the position he did so in

self-defense. The matter was tried before a jury, beginning on April 9, 2024. The State presented nine witnesses, including an eyewitness, a neighbor, two Texas Rangers, a 911 dispatcher, a forensic pathologist, a forensic scientist, and the Edwards County Sheriff and Chief Deputy. The State introduced two 911 calls, body cam footage of the crime scene, a transcript and video of Appellant's interview at the Sheriff's office, a handgun owned by Appellant, a handgun and holster owned by Estrada, a cartridge casing and bullet, fifty photos, the autopsy report, and two firearms reports. After the State rested, Appellant testified along with his wife who was present on the date of the incident.

A jury convicted Appellant of murder and sentenced him to fifty (50) years confinement in the Texas Department of Criminal Justice Correctional Institutions Division. He was fined $10,000 and ordered to pay court costs and reimbursement. Appellant now appeals, the sole issue being whether the evidence presented at trial is sufficient to support the jury's implicit rejection of Appellant's assertion of self-defense, or justification.

## FACTS

On Labor Day weekend in 2022, Appellant, his wife and daughter traveled from their home in Dallas to their ranch in Edwards County. Appellant invited an Edwards County neighbor, Charles Davidson, and his two guests, Victor Estrada and David Vega, to come over the next day for menudo. The four men gathered, as planned, and sat around a picnic table for several hours as they ate, drank and enjoyed each other's company. After four or five hours, Estrada escorted Davidson home because he had a swollen ankle. He shortly returned to Appellant's ranch and, within minutes of arriving back there, Estrada was shot and killed while sitting at the same picnic table.

## THE LAW OF SELF-DEFENSE AND THE STANDARD OF REVIEW

To obtain a conviction for murder, the State is required to prove beyond a reasonable doubt that Appellant intentionally or knowingly caused the death of Estrada. TEX. PENAL CODE § 19.02(b)(1). Section 9.02 of the Texas Penal Code provides a defense to murder if the conduct in question is justified. TEX. PENAL CODE § 9.02(c). Section 9.31 outlines the justification of self-defense. TEX. PENAL CODE § 9.31. A person is justified using deadly force against another "when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force." TEX. PENAL CODE § 9.32. The use of force is not justified "in response to verbal provocation alone." TEX. PENAL CODE § 9.31(b).

A defendant asserting self-defense has the initial burden to bring forth evidence supporting the justification defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Borton v. State*, 683 S.W.3d 459, 465 (Tex. App.—San Antonio 2023, no pet.); *Valverde v. State*, 490 S.W.3d 526, 527 (Tex. App.—San Antonio 2016, pet. ref'd). But, the State maintains the burden of persuasion to prove its own case beyond a reasonable doubt and to disprove the defense. *Zuliani*, 97 S.W.3d at 594; *Borton*, 683 S.W.3d at 464–65; *Valverde*, 490 S.W.3d at 527–28. The State is not required to produce evidence specifically refuting self-defense. *Zuliani*, 97 S.W.3d at 594; *Valverde*, 490 S.W.3d at 528.[1]

Appellant brings both a legal and factual sufficiency challenge and contends that the standard of review set forth in *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013)

---

[1] The jury was charged with the instruction that "[t]he actor's belief that the deadly force was immediately necessary is presumed to be reasonable if the actor knew or had reason to believe that the person against whom the deadly force was used was committing or attempting to commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery, and the actor did not provoke the person against whom the force was used or was not otherwise engaged in criminal activity other than a Class C Misdemeanor that is a violation of law or ordinance regulating traffic at the time the force was used." The jury was further charged that "the presumption applies unless the State proves beyond a reasonable doubt that the facts giving rise to the presumption do not exist."

applies. We disagree. *Matlock* addresses the standard of review in a case involving an affirmative defense. But, self-defense is not an affirmative defense. *Borton*, 683 S.W.3d at 467 (citing *Dudzik v. State*, 276 S.W.3d 554, 557 (Tex. App.—Waco 2008, pet. ref'd)); *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). The issue of self-defense is, instead, a fact issue to be determined by the jury, with a jury's verdict of guilt being an implicit finding that it rejected a defendant's self-defense theory. *Borton*, 683 S.W.3d at 465 (citing *Dudzik*, 276 S.W.3d at 557); *see also Saxton*, 804 S.W.2d at 913–14.

As such, when reviewing the sufficiency of evidence to support the jury's rejection of self-defense, we do not conduct a separate factual sufficiency challenge. *Rankin v. State*, 617 S.W.3d 169, 182 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Instead, we must examine all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found beyond a reasonable doubt both that (1) Appellant committed the offense with which he was charged, with evidence supporting all essential elements of the offense, and (2) Appellant was not acting in self-defense. *Borton*, 683 S.W.3d at 464-65; *Brooks*, 323 S.W.3d at 899, 912; *Saxton*, 804 S.W.2d at 914; *Dearborn v. State*, 420 S.W.3d 366, 372 (Tex. App.—Houston [14th Dist.] 2014, no pet.). In so doing, we defer to the factfinder's role as the sole judge of the credibility of the witnesses and the weight the evidence is afforded. *Brooks*, 323 S.W.3d at 899. And, we will resolve any conflicts in favor of the jury's finding. *Id.*; *Valverde*, 490 S.W.3d at 528.

### TRIAL TESTIMONY

The State's first witness was Amanda White, the 911 dispatcher who testified she took two 911 calls on the night in question, one from Vega, who stated that his friend was shot "cold-blooded," and another call from Appellant, who stated that he shot Estrada because Estrada took

his gun out when they were arguing over Appellant's wife. Both 911 calls were admitted into evidence and heard by the jury.

The State then presented J.W. Guthrie, the Sheriff of Edwards County. Sheriff Guthrie testified that he called the Texas Rangers and gathered law enforcement at the entrance gate of the ranch subdivision. After making a plan to approach, law enforcement first went to the home of Davidson, from which the first 911 call was made. Davidson and Vega were both at the home. Guthrie met with them while others went down the road to Appellant's ranch, where they were told the incident had taken place. Davidson told Sheriff Guthrie that he had left Appellant's home before the incident but that Vega was there when it occurred. Sheriff Guthrie testified he went to Appellant's ranch where Appellant identified himself as the individual who shot Estrada. He was taken into custody and transferred to the Sheriff's office for questioning. He stated Appellant was sitting calmly, in hand restraints, and was fairly quiet but cooperative. They secured the scene.

Sheriff Guthrie's Chief Deputy, Danny Irwin, testified next. He stated he was able to communicate with Appellant in English and that Appellant responded in English, cooperating and following instructions. Appellant told Deputy Irwin Estrada's body was on the back porch next to a picnic table. Deputy Irwin also spoke to Appellant's wife and helped her gather some things to go to a hotel with her daughter. Deputy Irwin's body cam footage was admitted into evidence.

Texas Ranger Christopher Ryan Kindell then testified. He stated he called Officer Jose Balderas, another Texas Ranger, to join him because he understood Appellant spoke Spanish. Ranger Kindell found a handgun on another table behind the picnic table—a Ruger 5.7 millimeter pistol. Estrada's body was on the ground with his feet still on the top bench seat of the

picnic table, face up as if he'd fallen back after being shot. Estrada's hands were empty but there was a knife inside his right boot. Ranger Kindell found a 5.7 millimeter cartridge casing about 10 to 12 feet from the picnic table. On the picnic table was a Taurus 9 millimeter handgun and a holster, which he later found belonged to Estrada. Ranger Kindell said that otherwise the picnic table was empty. After obtaining a search warrant, Ranger Kindell returned to the home and took photos, which were admitted into evidence. He found a garbage can full of beer cans and bottles outside, and inside the home he found a bottle of Crown Royal Black, a bottle of Scotch, and a handgun magazine with 5.7 millimeter ammunition. Based on his investigation on the day of the incident, Ranger Kindell concluded a murder had occurred, understanding that "at some point, Mr. Molina became upset with some words that Mr.—I'm trying to keep names straight—that Mr. Estrada said." Ranger Kindell testified he did not believe self-defense was a possibility.[2]

Next was the testimony of Vega, a friend of Davidson's who was also visiting in order to hunt. He characterized Estrada as "just a big guy, a jokester"—a "fun person to be around." Vega stated Appellant came to Davidson's home and invited them all over the following day. They all had met Appellant before, during the prior hunting season. Because it rained the next morning, the men gathered at Appellant's home to eat menudo prepared by Appellant's wife. They sat around a picnic table and drank for hours, Vega drinking Bud Light and Appellant and Estrada drinking liquor. At some point, Davidson left to go home because of a swollen ankle. Estrada escorted him home and then shortly returned on his own. The three of them—Appellant, Vega, and Estrada—were sitting around the picnic table, with Appellant and Vega on one side and Estrada on the other. Vega testified that Appellant and Estrada were speaking to each other in Spanish and, while he understands very little Spanish, nothing in either man's tone or body

---

[2] Ranger Kindell testified that the next day he was placed on suspension due to his involvement in another matter and Ranger Balderas took over the investigation.

language indicated that anything violent was about to happen. They were laughing. He stated, "it happened so quick that I just—Mr. Molina stood up and just shot him. One time. He stood up and threw his hands up—Molina turned around and said, He disrespected me." Vega testified that, prior to being shot, Estrada was sitting at the picnic table, holding his cup, with his hands above the table, and that Estrada never pulled his pistol or his knife. He did not know where Appellant's wife was at the time of the shooting, but he immediately left Appellant's ranch to get back to Davidson's home and call 911.

Vega further testified that, at the time of the shooting, Estrada's holster and gun were not on the table and that, when he left Appellant's home, there was salsa in the middle of the table, a bottle, cups, and his Bud Light on the picnic table. After being shown a photo of the picnic table taken during the crime scene investigation, empty, he told the jury it appeared someone had cleaned up before the police got there. He confirmed that the bottles of liquor found inside were the same bottles Appellant and Estrada were drinking from outside.

The State next offered the testimony of Suzanna Dana, a forensic pathologist who performed the autopsy and through whom the autopsy report was admitted. Dana testified that there was no gun residue on Estrada's hands and that he had both alcohol and caffeine in his system, with a blood alcohol level of 0.179. From the entry wound and bullet path through Estrada's body, Dana testified that her findings were consistent with Vega's testimony that Molina stood up and fired at Estrada from across the picnic table.

Ricardo Ramirez was the next witness presented by the State, a forensic scientist with the firearms section of the Texas Department of Public Safety Crime Lab. Ramirez testified he examined the cartridge casing and projectile found at the scene as well as the 5.7 millimeter Ruger pistol with 13 unfired rounds still in it. He confirmed that the cartridge casing and the

projectile were remnants of the bullet fired from the Ruger pistol. Both findings were verified by another examiner, which was required before his report could be released.

Charles Davidson, Appellant's neighbor and father-in-law of Estrada, confirmed Vega's testimony that Appellant and Estrada were both drinking liquor while Vega and Davidson were drinking beer. He said Vega was not "falling-down drunk" and was acting normal, not slurring his words. Davidson left Appellant's home because of his swollen ankle and Estrada, who had taken him home, shortly returned to Appellant's home. Davidson testified that when he left Appellant's home, Appellant was sitting directly across from Estrada and they were all talking and laughing, "just like neighbors do." He confirmed that when he left, the picnic table had liquor bottles, beer bottles, glasses and food on top of it. He stated that when Vega showed up at his home later, Vega said, "Vic's dead. Raymundo shot him." When asked what happened, Vega told Davidson they were talking and when Estrada said something to him in Spanish, Appellant "got up and shot him and said, 'He disrespected me.'" Vega then called 911 and Davidson called his daughter, Estrada's wife, to tell her what happened. Finally, Davidson testified that Appellant had mentioned to him that Appellant was having a hard time with his father's recent passing.

The State's final witness was Texas Ranger Jose Balderas. He conducted the interview of Appellant at the Sheriff's office. Balderas testified Appellant was cooperative. He read Appellant his rights in Spanish, at Appellant's request, because Appellant was having a hard time understanding the rights read in English. Appellant indicated he understood his rights and chose to waive them because he wanted to speak about what had occurred. A transcript of the video interview was read in front of the jury.

In the interview, Appellant told Balderas that Estrada "turned to look at my wife with man's eyes and speak obscene words." He stated that Estrada "said that my wife had a very nice

ass" which he characterized as "[o]ffensive words." He stated that he told Estrada to leave "[a]nd he said to me, nobody says that to me, and he pulled out his handgun and put it on the table. And I said, don't do that. And, he said, if I do it—I'll kill you if I want. And I said no more. I pulled out my handgun and shot." Later in the interview he stated that Estrada "slammed the handgun on the table" and said "that he was going to kill me." Still later, he said, "He said to me, I say what I want, and he drew. I stood up and went backward. I drew and shot and stepped back even more while looking." He then said he shot Estrada as Estrada was trying to open the holster. He went on to tell Ranger Balderas that Estrada said, "I don't give a fuck. I'll kill you." Immediately after, he said Estrada told him "I'll fucking kill you." Finally, Appellant told Ranger Balderas that his wife, who was inside with his daughter when the shooting occurred, came outside after the shooting to see what had happened. He stated that "[s]he never saw the shooting."

After speaking with Appellant, Ranger Balderas conferred with Ranger Kindell to determine whether the evidence from the scene corroborated Appellant's story. He also spoke to Appellant's wife, Rosa Jimenez Tinajero. He noted inconsistencies between Appellant's story and that of his wife and discussed those inconsistencies with Ranger Kindell. He interviewed Tinajero again because of his concern that the crime scene had been altered or cleaned up prior to law enforcement arriving. When he arrived at the scene, the only things on the table were a hat, a holster, and a 9 millimeter handgun, which were determined to be owned by Estrada. Ranger Balderas testified that the clip on the holster was designed to hold on to the belt, allowing the gun to be pulled out of the holster without the holster being removed. He also testified that, given Estrada's size, it would have taken some effort to remove the holster along with the gun. He also confirmed that the 5.7 millimeter Ruger handgun was owned by Appellant.

After the State rested its case, Appellant presented two witnesses, himself and his wife, Tinajero. Tinajero testified that there were no arguments or bad words between the men for the four hours they were there prior to Davidson leaving. They were speaking in both English and Spanish. She said her husband had been drinking liquor for about four hours. But, when Estrada came back from Davidson's house, Appellant was tired and ready to go hunting and the guests had overstayed their welcome. Contrary to Appellant's statements made during his interview at the Sheriff's office, she testified that she was outside during the incident, very near Estrada, and saw him place his weapon on the table. She said she heard Estrada talking about her body and saw that Appellant was uncomfortable about that. She said Estrada put his gun on the table and looked at Appellant "like challenging him." He was sarcastic and was "like, I'm the guy, the man." She testified she was concerned about Estrada doing something to her or her daughter because of how intoxicated he was. She stated her husband wasn't angry, but she was then impeached using a prior statement wherein she'd stated that he was angry and wanted to shoot more after he'd shot Estrada but she grabbed him and told him to stop. She admitted telling Appellant that he could have simply asked them to leave. When asked what Estrada did wrong warranting the shooting, she testified, "The way he was making comments about me in my home, disrespecting me because I was in my home, in my property with my daughter. He should not have made comments about me like that because I wasn't talking to him. I wasn't telling him anything." Finally, she testified that when it happened, she had already picked up the food from the table but there were still bottles of liquor, beer, glasses and cups. Later in her testimony she said she'd actually cleaned the picnic table before the shooting.

Finally, Appellant testified on his own behalf. He testified that he'd planned on hunting that day to clear his head because he was dealing with his father's passing that occurred just two

weeks before. He stated that the day was "magnificent" but that when Estrada returned from Davidson's house Appellant was ready to go hunting. He denied that he was intoxicated. When asked about his wife's testimony that she was outside at the time of the shooting, Appellant denied telling Ranger Balderas that she did not see the shooting. He testified, "Well, the moment he put the gun, I was afraid. But it was not as much as when he said that he disrespected my wife. That he said, Ma'am, you have a very nice ass. And, I told him, Go fuck yourself out of my house. And that's when I really was scared when he said—he put his gun like this (indicating) and I [sic][3] said, I'll kill you whenever I want."

## ANALYSIS

Appellant does not challenge the sufficiency of the evidence to support the jury's finding of the essential elements of murder beyond a reasonable doubt. Instead, he challenges the sufficiency of the evidence to support the jury's rejection of his self-defense claim. This is consistent with his requesting a self-defense instruction at trial since "a defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense *including* the culpable mental state, but interposes [a] justification to excuse the otherwise criminal conduct." *Shaw v. State,* 243 S.W.3d 647, 659 (Tex. Crim. App. 2007) (emphasis in original). With regard to the essential elements of the offense, the jury was charged that Appellant committed the offense of murder if, with the intent to cause serious bodily injury to Estrada, he committed an act clearly dangerous to human life that caused Estrada's death. In this case, the evidence is undisputed that Appellant shot Estrada, which was an act clearly dangerous to human life, and Estrada died as a result. Accordingly, consistent with Appellant's request for the self-defense instruction, the evidence establishes every essential element of the offense of murder beyond a reasonable doubt. *See Saxton,* 804 S.W.2d at 914. We

---

[3] Appellant later clarified that Estrada made this statement.

next examine whether the jury "also would have found against [Appellant] on the self-defense issue beyond a reasonable doubt." *Id.*

Given that the use of force is not justified "in response to verbal provocation alone," the factual dispute, which the jury was charged with deciding, was whether Estrada threatened Appellant before he was shot. TEX. PENAL CODE § 9.31(b). In our review, we defer to the jury's assessment of the credibility of the witnesses, which becomes critical when the testimony of different witnesses conflict. *See Brooks,* 323 S.W.3d at 899; *Smith v. State,* 355 S.W.3d 138, 146 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (noting defendant's testimony alone does not conclusively prove a claim of self-defense because jury could reject the testimony).

First, with regard to whether Estrada removed his handgun and holster from his belt, placing it on the table, the evidence is disputed. Vega testified that Estrada did not place his gun or his knife on the table and that he was holding a cup at the time he was shot. While Appellant and his wife both testified that Estrada placed his handgun on the table, Appellant had previously told law enforcement that she was inside when the shooting occurred and came outside asking what had happened. Further, Ranger Balderas testified that, had Estrada pulled his gun, his holster was designed to stay on the belt when he did so and that it would have taken some effort for him to remove both the gun and the holster.

While the gun and holster were on the table, the gun was separate from the holster. Yet, Appellant testified that he shot Estrada as he was opening the holster. And, the jury had reason to question whether the crime scene had been altered prior to law enforcement arriving. Davidson testified that the table was full of liquor bottles, beer cans, glasses and food when he left and Vega testified it was the same way when the shooting occurred. Vega, however, left immediately after the shooting and Appellant and his wife were alone at the home for approximately an hour

before law enforcement arrived. Appellant's wife admitted to cleaning the table, first stating she did so after the shooting and then changing her testimony to say that she'd done so beforehand. Ranger Kindell and Ranger Balderas both testified about their concerns that the table had been cleared prior to their arrival, with them finding evidence inside the home that was relevant to the outdoor scene.

The jury is the exclusive arbiter charged with resolving inconsistencies in the evidence. *Ramsey v. State*, 473 S.W.3d 805, 808 n.3 (Tex. Crim. App. 2015). Because the jury can make reasonable inferences from the evidence presented, we consider only whether those inferences are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the jury's verdict. *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We will reverse only in "the rare occurrence when a factfinder does not act rationally." *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). Given the jury clearly chose to discredit Appellant's version of events, the jury could have reasonably inferred that the gun and holster were removed from Estrada's body after the incident. *See Lozano v. State*, 359 S.W.3d 790, 815 (Tex. App.—Fort Worth 2012, pet. ref'd) (holding jury could reasonably infer crime scene was staged based on the evidence presented); *Gear v. State*, 340 S.W.3d 743, 747 (Tex. Crim. App. 2011) (explaining that a jury may consider a defendant's inconsistent statements as affirmative evidence of guilt); *Padilla v. State*, 326 S.W.3d 195, 201 (Tex. Crim. App. 2010) (recognizing that rational fact finder can consider a defendant's untruthful statement as affirmative evidence of guilt); *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim App. 2004) ("Attempts to conceal incriminating evidence, inconsistent statements, and implausible explanations to the police are probative of wrongful conduct and are also circumstances of guilt.").

As to the question of whether Estrada threatened Appellant, Vega testified that, while he did not understand what the two men were talking about, nothing in their tone or body language indicated to him that something violent was about to happen. Appellant's wife, when asked what Estrada did to warrant being shot, mentioned only his alleged statements about her body, nothing about a threat made. And, while Appellant testified that Estrada threatened to kill him, he offered many different versions of that threat, with each version getting worse and more emphatic. Given the evidence presented, the jury could have concluded that Estrada did not threaten to kill Appellant.

Based on our review of the evidence presented at trial, we hold the record sufficiently supports the jury's verdict of guilty despite the assertion of self-defense and, accordingly, affirm.

Lori Massey Brissette, Justice

DO NOT PUBLISH